939 So.2d 966 (2006)
In re AMENDMENTS TO THE FLORIDA RULES OF JUDICIAL ADMINISTRATIONREORGANIZATION OF THE RULES.
No. SC05-1588.
Supreme Court of Florida.
September 21, 2006.
Gary Devenow Fox, Chair, Rules of Judicial Administration Committee, Miami, FL, Honorable Winifred J. Sharp, Past-Chair, Fifth District Court of Appeal, Daytona Beach, FL, Honorable Claudia R. Isom, Past-Chair, Thirteenth Judicial Circuit, Tampa, FL, John F. Harkness, Jr., Executive Director, and J. Craig Shaw, Bar Staff Liaison, The Florida Bar, Tallahassee, FL, for Petitioner.
David A. Rowland, General Counsel, Thirteenth Judicial Circuit, Tampa, FL, and Stephen Krosschell of Goodman and Nekvasil, P.A., Clearwater, FL, Opponents, responding with comments.
PER CURIAM.
At the request of the Court, the Rules of Judicial Administration Committee (Rules Committee or Committee) has filed an out-of-cycle report proposing the reorganization of the Florida Rules of Judicial Administration. We have jurisdiction. See art. V, § 2(a), Fla. Const. We adopt the proposed reorganization of the existing rules and also adopt new rule 2.140(g), Amendments to the Rules of Judicial Administration.

BACKGROUND
The Court asked the Rules Committee to reorganize the Rules of Judicial Administration into rules that are (1) purely administrative in nature and do not need referral to or input from the Rules Committee prior to their adoption or amendment; (2) procedural in nature and impact the practice of law and require referral to or input from the Committee prior to their adoption or amendment; and (3) "hybrids" and could require referral to or input from the Committee prior to their adoption or amendment. In response to the Court's request, the Committee proposes reorganizing the rules into five parts and identifies which parts and rules should be amended by the Court without input from the Committee.
The proposed reorganization was approved by the Committee by a vote of twenty-eight to one and was unanimously approved by the Board of Governors of The Florida Bar. The Committee published its proposals for comment prior to filing the proposals with the Court but received no comments.
Based on the Committee's recommendations, the Court proposed new rule 2.140(g), which outlines the Rules of Judicial Administration that generally will be amended without referral to or proposal from the Committee. The Court published the proposed reorganization and new rule for comment. Two comments were filed with the Court. The Committee filed a response to those comments.

AMENDMENTS
After considering the proposed reorganization, the comments, and the Committee's response, we adopt the reorganized Florida Rules of Judicial Administration as reflected in the appendix to this opinion. The substance and language of the existing Rules of Judicial Administration are not changed.[1] The rules simply are renumbered *967 and, in some instances, renamed in a manner that the Committee believes makes them more "user-friendly."
The renumbered rules are organized into the following five parts according to subject matter:[2] Part I. General Provisions; Part II. State Court Administration; Part III. Judicial Officers; Part IV. Judicial Proceedings and Records; and Part V. Practice of Law. For example, the Committee grouped rules affecting the practice of law together in Part V to "eliminate any element of surprise and to facilitate compliance by practicing attorneys." The Committee designed the revised table of contents to "quickly lead the user to the desired rule as well as other rules related to the same subject matter." Most significantly, for the Court's purposes, the reorganization allows the Court to readily identify which rules should be amended without the need for referral to the Rules Committee.
New rule 2.140(g),[3] which was proposed by the Court after consideration of the Committee's report, provides that changes to the Rules of Judicial Administration contained in Part II, State Court Administration, and rules 2.310 and 2.320, contained in Part III, Judicial Officers, generally will be considered and adopted by the Court without referral to or proposal from the Rules Committee. Amendments to all other Rules of Judicial Administration will be adopted in accordance with the existing provisions of renumbered rule 2.140, Amending Rules of Court.
We take this opportunity to thank the Rules of Judicial Administration Committee for presenting the Court with a well organized, user-friendly body of rules that allows for a more efficient amendment process. Accordingly, the Florida Rules of Judicial Administration are amended as reflected in the appendix[4] to this opinion. The reorganized rules replace the existing rules. The amendments shall become effective immediately upon the release of this opinion.[5]
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

*968 APPENDIX

FLORIDA RULES OF JUDICIAL ADMINISTRATION

PART I. GENERAL PROVISIONS
2.110. SCOPE AND PURPOSE
2.120. DEFINITIONS
2.130. PRIORITY OF CONFLICTING APPELLATE RULES
2.140. AMENDING RULES OF COURT

PART II. STATE COURT ADMINISTRATION
2.205. THE SUPREME COURT
2.210. DISTRICT COURTS OF APPEAL
2.215. TRIAL COURT ADMINISTRATION
2.220. CONFERENCE OF COUNTY COURT JUDGES
2.225. JUDICIAL MANAGEMENT COUNCIL
2.230. TRIAL COURT BUDGET COMMISSION
2.235. DISTRICT COURT OF APPEAL BUDGET COMMISSION
2.240. DETERMINATION OF NEED FOR ADDITIONAL JUDGES
2.241. DETERMINATION OF THE NECESSITY TO INCREASE, DECREASE, OR REDEFINE APPELLATE DISTRICTS
2.245. CASE REPORTING SYSTEM FOR TRIAL COURTS
2.250. TIME STANDARDS FOR TRIAL AND APPELLATE COURTS AND REPORTING REQUIREMENTS
2.255. STATEWIDE GRAND JURY
2.260. CHANGE OF VENUE
2.265. MUNICIPAL ORDINANCE VIOLATIONS

PART III. JUDICIAL OFFICERS
2.310. JUDICIAL DISCIPLINE, REMOVAL, RETIREMENT, AND SUSPENSION
2.320. CONTINUING JUDICIAL EDUCATION
2.330. DISQUALIFICATION OF TRIAL JUDGES

PART IV. JUDICIAL PROCEEDINGS AND RECORDS
2.410. POSSESSION OF COURT RECORDS
2.420. PUBLIC ACCESS TO JUDICIAL BRANCH RECORDS
2.430. RETENTION OF COURT RECORDS
2.440. RETENTION OF JUDICIAL BRANCH ADMINISTRATIVE RECORDS
2.450. TECHNOLOGICAL COVERAGE OF JUDICIAL PROCEEDINGS

PART V. PRACTICE OF LAW

A. ATTORNEYS
2.505. ATTORNEYS
2.510. FOREIGN ATTORNEYS

B. PRACTICE AND LITIGATION PROCEDURES
2.515. SIGNATURE OF ATTORNEYS AND PARTIES
2.520. PAPER
2.525. ELECTRONIC FILING
2.530. COMMUNICATION EQUIPMENT
2.535. COURT REPORTING
*969 2.540. NOTICES TO PERSONS WITH DISABILITIES
2.545. CASE MANAGEMENT
2.550. CALENDAR CONFLICTS
2.555. INITIATION OF CRIMINAL PROCEEDINGS
2.560. APPOINTMENT OF INTERPRETERS FOR NON-ENGLISH-SPEAKING PERSONS

PART I. GENERAL PROVISIONS

RULE 2.110. SCOPE AND PURPOSE
These rules, cited as "Florida Rules of Judicial Administration" and abbreviated as "Fla. R. Jud. Admin.," shall take effect at 12:01 a.m. on July 1, 1979. They shall apply to administrative matters in all courts to which the rules are applicable by their terms. The rules shall be construed to secure the speedy and inexpensive determination of every proceeding to which they are applicable. These rules shall supersede all conflicting rules and statutes.

RULE 2.120. DEFINITIONS
The following terms have the meanings shown as used in these rules:
(a) Court Rule: A rule of practice or procedure adopted to facilitate the uniform conduct of litigation applicable to all proceedings, all parties, and all attorneys.
(b) Local Court Rule:
(1) A rule of practice or procedure for circuit or county application only that, because of local conditions, supplies an omission in or facilitates application of a rule of statewide application and does not conflict therewith.
(2) A rule that addresses other matters that are required by the Florida Constitution, general law, rules of court, or a supreme court opinion to be adopted by or in a local rule.
(c) Administrative Order: A directive necessary to administer properly the court's affairs but not inconsistent with the constitution or with court rules and administrative orders entered by the supreme court.

RULE 2.130. PRIORITY OF CONFLICTING APPELLATE RULES
The Florida Rules of Appellate Procedure shall control all proceedings in the supreme court and the district courts, and all proceedings in which the circuit courts exercise their appellate jurisdiction, notwithstanding any conflicting rules of procedure.

RULE 2.140. AMENDING RULES OF COURT
(a) Amendments Generally. The following procedure shall be followed for consideration of rule amendments generally other than those adopted under subdivisions (d), (e), (f), and (g):
(1) Proposals for court rules, amendments to them, or abrogation of them may be made by any person.
(2) Proposals shall be submitted to the clerk of the supreme court in writing and shall include a general description of the proposed rule change or a specified proposed change in content. The clerk of the supreme court shall refer proposals to the appropriate committee under subdivision (a)(3).
(3) The Florida Bar shall appoint the following committees to consider rule proposals: Civil Procedure Rules Committee, Criminal Procedure Rules Committee, Small Claims Rules Committee, Traffic Court Rules Committee, Appellate Court Rules Committee, Juvenile Court Rules Committee, Code and Rules of Evidence Committee, Rules of Judicial Administration *970 Committee, Probate Rules Committee, and Family Law Rules Committee.
(4) Each committee shall be composed of attorneys and judges with extensive experience and training in the area of practice of the committee calling for regular, frequent use of the rules. The members of the committee shall serve for 3-year staggered terms. The president of The Florida Bar shall appoint the chair and vice chair of each committee.
(5) The Rules of Judicial Administration Committee shall also serve as a rules coordinating committee. Each rules committee shall have at least 1 of its members appointed to the Rules of Judicial Administration Committee to serve as liaison. All proposed rules changes shall be submitted to the Rules of Judicial Administration Committee, which shall then refer all proposed rules changes to those rules committees that might be affected by the proposed change. All proposed changes shall be submitted by June 15 of each year of the rules cycle.
(6) The committees shall consider and vote on each proposal. The committees may originate proposals and are charged with the duty of regular review and reevaluation of the rules to advance orderly and inexpensive procedures in the administration of justice. The committees may accept or reject proposed amendments or may amend proposals. The committees shall keep minutes of their activities, which minutes shall reflect the action taken on each proposal. Copies of the minutes shall be furnished to the clerk of the supreme court, to the board of governors of The Florida Bar, and to the proponent of any proposal considered at the meeting.
(b) Schedule for Rules Proposals.
(1) Each committee shall report all proposed rule changes on a staggered basis (with the first cycle starting in 2006). Reports shall be made by the Criminal Procedure Rules Committee, the Traffic Court Rules Committee, and the Juvenile Court Rules Committee in 2006; by the Civil Procedure Rules Committee, the Probate Rules Committee, the Small Claims Rules Committee, and the Code and Rules of Evidence Committee in 2007; and by the Family Law Rules Committee, the Appellate Court Rules Committee, and the Rules of Judicial Administration Committee in 2008. Thereafter, the cycle shall repeat.
(2) No later than June 15 of the year prior to each reporting year or such other date as the board of governors of The Florida Bar may set, each reporting committee shall submit all proposed rule changes to the board of governors with the committee's final numerical voting record on each proposal. Contemporaneously with reporting proposed rule changes to the board of governors, each committee report shall be furnished to the Speaker of the Florida House of Representatives, the President of the Florida Senate, and the chairs of the House and Senate committees as designated by the Speaker and the President, and published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News. Any person desiring to comment upon proposed rule changes shall submit written comments to the appropriate committee chair no later than August 1 of the year prior to each reporting year. Each committee shall consider any comments submitted and thereafter report to the board of governors, no later than October 15 of the year prior to each reporting year, any revisions to the proposed rule changes. Contemporaneously with reporting any revisions to the board of governors, each committee's revised proposed rule changes shall be furnished to the Speaker of the *971 Florida House of Representatives, the President of the Florida Senate, and the chairs of the House and Senate committees as designated by the Speaker and the President, and published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News. Any person desiring to comment thereafter shall submit written comments to the supreme court in accordance with subdivision (b)(6).
(3) No later than December 15 of the year prior to each reporting year, the board of governors shall consider the proposals and shall vote on each proposal to recommend acceptance, rejection, or amendment.
(4) No later than February 1 of each reporting year, each committee shall file a report of its proposed rule changes with the supreme court. Each committee may amend its recommendations to coincide with the recommendations of the board of governors or may decline to do so or may amend its recommendations in another manner. Any such amendments shall also be reported to the supreme court. The report shall include:
(A) a list of the proposed changes, together with a detailed explanation of each proposal and the name and address of the proponent of each change if other than the rules committee;
(B) the final numerical voting record of the proposals in the committee;
(C) a report of the action taken by the committee on comments submitted in accordance with subdivision (b)(2);
(D) a report of the action and voting record of the board of governors;
(E) any dissenting views of the committee and, if available, of the board; and
(F) an appendix containing all comments submitted to the committee and a two-column chart setting forth the proposed changes in legislative format in the first column and a brief explanation of each change in the second column.
The report and the proposed rule changes shall be filed with the supreme court, in legislative format, both on paper and in an electronic format approved by the supreme court.
(5) If oral argument is deemed necessary, the supreme court shall establish a date during the month of May or June of each reporting year for oral argument on the proposals. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. If the committee modifies its recommendations after considering comments submitted in accordance with subdivision (b)(2), the recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News.
(6) Before the date of oral argument, any person may file comments concerning *972 the proposals. All comments and other submissions by interested persons shall be filed with the clerk of the supreme court and served on the chair of the appropriate rules committee, and on the proponent of the rule change if other than the rules committee. The chair of the rules committee shall file a response to all comments within the time period set by the court. All comments and other submissions regarding the rule change proposals, in addition to being filed with the supreme court in paper format, shall also be filed in an electronic format approved by the supreme court. Prior to the date of oral argument and as soon as practicable after the date of filing, the clerk of the supreme court shall publish on the Internet websites of the supreme court and The Florida Bar all comments and the responses of the chair of the rules committee that have been filed concerning the rule change proposals. All requests or submissions by a rules committee made in connection with a pending rule change proposal shall be filed with the clerk of the supreme court and thereafter published by the clerk of the supreme court on the Internet websites of the supreme court and The Florida Bar.
(7) Orders of the supreme court on said proposals should be adopted in sufficient time to take effect on January 1 of the year following the reporting year. The supreme court may permit motions for rehearing to be filed on behalf of any person, The Florida Bar, any bar association, and the affected committee.
(c) Rejected Proposals. If a committee rejects a proposal, the proponent may submit the proposed rule to the board of governors and shall notify the chair and vice chair of the affected committee of the submission of the proposed rule to the board of governors. Minority reports of committees are allowed and may be submitted to both the board of governors and the supreme court.
(d) Emergency Amendments by Court. The supreme court, with or without notice, may change court rules at any time if an emergency exists that does not permit reference to the appropriate committee of The Florida Bar for recommendations. If a change is made without reference to the committee, the change may become effective immediately or at a future time. In either event, the court shall fix a date for further consideration of the change. Any person may file comments concerning the change, seeking its abrogation or a delay in the effective date, in accordance with the procedures set forth in subdivision (b)(6) of this rule. The court may allow oral argument in support of such comments by The Florida Bar, by its sections and committees, and by other bar associations. Notice of the hearing on the change and a copy of the change shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The change shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
*973 (e) Emergency Recommendations by Committee. If, in the opinion of a committee, a proposal is of an emergency nature, and the board of governors concurs, proposals may be made at any time to the supreme court. If the court agrees that an emergency exists, the court may set a time for oral argument and consideration of the proposal. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(f) Request by Court. The supreme court may direct special consideration of a proposal at times other than those specified in this rule and may require a committee to report its recommendation with the recommendations of the board of governors. All requests or submissions by a rules committee made in connection with a request under this subdivision shall be filed with the clerk of the supreme court. The supreme court may set oral argument on the report at any time. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(g) Amendments to the Rules of Judicial Administration.
(1) Amendments Without Referral to Rules Committee. Changes to the Rules of Judicial Administration contained in Part II, State Court Administration, of these rules, and rules 2.310, and 2.320, contained in Part III, Judicial Officers, generally will be considered and adopted by the supreme court without reference to or proposal from the Rules of Judicial Administration Committee. The supreme court may amend rules under this subdivision at any time, with or without notice. If a change is made without notice, the court shall fix a date for future consideration of the change and the change shall be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar *974 News. Any person may file comments concerning the change, in accordance with the procedures set forth in subdivision (b)(6) of this rule. The court may hear oral argument on the change. Notice of the hearing on the change and a copy of the change shall be provided in accordance with subdivision (d) of this rule.
(2) Other Amendments. Amendments to all other Rules of Judicial Administration shall be referred to or proposed by the Rules of Judicial Administration Committee and adopted by the supreme court as provided in subdivisions (a), (b), (c), (d), (e), and (f) of this rule.
(h) Local Rules Proposed by Trial Courts. The foregoing procedure shall not apply to local rules proposed by a majority of circuit and county judges in the circuit. The chief justice of the supreme court may appoint a Local Rule Advisory Committee to consider and make recommendations to the court concerning local rules and administrative orders submitted pursuant to rule 2.215(e).

Committee Notes
1980 Amendment. Rule 2.130 is entirely rewritten to codify the procedures for changes to all Florida rules of procedure as set forth by this court in In re Rules of Court: Procedure for Consideration of Proposals Concerning Practice and Procedure, 276 So.2d 467 (Fla.1972), and to update those procedures based on current practice. The Supreme Court Rules Advisory Committee has been abolished, and the Local Rules Advisory Committee has been established.

PART II. STATE COURT ADMINISTRATION

RULE 2.205. THE SUPREME COURT
(a) Internal Government.
(1) Exercise of Powers and Jurisdiction. The supreme court shall exercise its powers and jurisdiction en banc. Five justices shall constitute a quorum and the concurrence of 4 shall be necessary to a decision. In cases requiring only a panel of 5, if 4 of the 5 justices who consider the case do not concur, it shall be submitted to the other 2 justices.
(2) Chief Justice.
(A) The chief justice shall be chosen by majority vote of the justices for a term commencing on July 1 of even-numbered years. If a vacancy occurs, a successor shall be chosen promptly to serve the balance of the unexpired term.
(B) The chief justice shall have the following administrative powers and duties. The chief justice shall:
(i) be the administrative officer of the court and shall be responsible for the dispatch of its business;
(ii) have the power to act on requests for stays during the pendency of proceedings, to order the consolidation of cases, to determine all procedural motions and petitions relating to the time for filing and size of briefs and other papers provided for under the rules of this court, to advance or continue cases, and to rule on other procedural matters relating to any proceeding or process in the court;
(iii) have the power to assign active or retired county, circuit, or appellate judges or justices to judicial service in this state, in accordance with subdivisions (a)(3) and (a)(4) of this rule;
(iv) have the power, upon request of the chief judge of any circuit or district, or sua sponte, in the event of natural disaster, civil disobedience, or other emergency situation requiring the closure of courts or other circumstances inhibiting the ability of litigants to comply with deadlines imposed by rules of procedure applicable in the courts of this state, to enter such order *975 or orders as may be appropriate to suspend, toll, or otherwise grant relief from time deadlines imposed by otherwise applicable statutes and rules of procedure for such period as may be appropriate, including, without limitation, those affecting speedy trial procedures in criminal and juvenile proceedings, all civil process and proceedings, and all appellate time limitations; and
(v) perform such other administrative duties as may be required and which are not otherwise provided for by law or rule.
(C) The chief justice shall be notified by all justices of any contemplated absences from the court and the reasons therefor.
(D) If the chief justice dies, retires, or is unable to perform the duties of the office, the justice longest in continuous service shall perform the duties during the period of incapacity or until a successor chief justice is elected.
(3) Administration.
(A) The chief justice may, either upon request or when otherwise necessary for the prompt dispatch of business in the courts of this state, temporarily assign justices of the supreme court, judges of district courts of appeal, circuit judges, and judges of county courts to any court for which they are qualified to serve. Any consenting retired justice or judge may be assigned to judicial service and receive compensation as provided by law.
(B) For the purpose of judicial administration, a "retired judge" is defined as a judge not engaged in the practice of law who has been a judicial officer of this state. A retired judge shall comply with all requirements that the supreme court deems necessary relating to the recall of retired judges.
(C) When a judge who is eligible to draw retirement compensation has entered the private practice of law, the judge may be eligible for recall to judicial service upon cessation of the private practice of law and approval of the judge's application to the court. The application shall state the period of time the judge has not engaged in the practice of law, and must be approved by the court before the judge shall be eligible for recall to judicial service.
(D) A "senior judge" is a retired judge who is eligible to serve on assignment to temporary judicial duty.
(4) Assignments of Justices and Judges.
(A) When a justice of the supreme court is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief justice may assign to the court any judge who is qualified to serve, for such time as the chief justice may direct.
(B) When a judge of any district court of appeal is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief judge shall advise the chief justice and the chief justice may assign to the court any judge who is qualified to serve, for such time or such proceedings as the chief justice may direct.
(C) When any circuit or county judge is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief judge of the circuit may assign any judge in the circuit to temporary service for which the judge is qualified, in accordance with rule 2.215. If the chief judge deems it necessary, the chief judge may request the chief justice to assign a judge to the court for such time or such proceedings as the chief justice may direct.
(b) Clerk.
*976 (1) Appointment. The supreme court shall appoint a clerk who shall hold office at the pleasure of the court and perform such duties as the court directs. The clerk's compensation shall be fixed by law. The clerk's office shall be in the supreme court building. The clerk shall devote full time to the duties of the office and shall not engage in the practice of law while in office.
(2) Custody of Records, Files, and Seal. All court records and the seal of the court shall be kept in the office and the custody of the clerk. The clerk shall not allow any court record to be taken from the clerk's office or the courtroom, except by a justice of the court or upon the order of the court.
(3) Records of Proceedings. The clerk shall keep such records as the court may from time to time order or direct. The clerk shall keep a docket or equivalent electronic record of all cases that are brought for review to, or that originate in, the court. Each case shall be numbered in the order in which the notice, petition, or other initial pleading originating the cause is filed in the court.
(4) Filing Fee. In all cases filed in the court, the clerk shall require the payment of a fee as provided by law when the notice, petition, or other initial pleading is filed. The payment shall not be exacted in advance in appeals in which a party has been adjudicated insolvent for the purpose of an appeal or in appeals in which the state is the real party in interest as the moving party. The payment of the fee shall not be required in habeas corpus proceedings, or appeals therefrom, arising out of or in connection with criminal actions.
(5) Issuance of Mandate; Recordation and Notification. The clerk shall issue such mandates or process as may be directed by the court. Upon the issuance of any mandate, the clerk shall record the issuance in a book or equivalent electronic record kept for that purpose, in which the date of issuance and the manner of transmittal of the process shall be noted. In proceedings in which no mandate is issued, upon final adjudication of the pending cause the clerk shall transmit to the party affected thereby a copy of the court's order or judgment. The clerk shall notify the attorneys of record of the issuance of any mandate or the rendition of any final judgment. The clerk shall furnish without charge to all attorneys of record in any cause a copy of any order or written opinion rendered in such action.
(6) Return of Original Papers. Upon the conclusion of any proceeding in the supreme court, the clerk shall return to the clerk of the lower court the original papers or files transmitted to the court for use in the cause.
(c) Librarian.
(1) Appointment. The supreme court shall appoint a librarian of the supreme court and such assistants as may be necessary. The supreme court library shall be in the custody of the librarian, but under the exclusive control of the court. The library shall be open to members of the bar of the supreme court, to members of the legislature, to law officers of the executive or other departments of the state, and to such other persons as may be allowed to use the library by special permission of the court.
(2) Library Hours. The library shall be open during such times as the reasonable needs of the bar require and shall be governed by regulations made by the librarian with the approval of the court.
*977 (3) Books. Books shall not be removed from the library except for use by, or upon order of, any justice.
(d) Marshal.
(1) Appointment. The supreme court shall appoint a marshal who shall hold office at the pleasure of the court and perform such duties as the court directs. The marshal's compensation shall be fixed by law.
(2) Duties. The marshal shall have power to execute process of the court throughout the state and such other powers as may be conferred by law. The marshal may deputize the sheriff or a deputy sheriff in any county to execute process of the court and shall perform such clerical or ministerial duties as the court may direct or as required by law. Subject to the direction of the court, the marshal shall be custodian of the supreme court building and grounds.
(e) State Courts Administrator.
(1) Appointment. The supreme court shall appoint a state courts administrator who shall serve at the pleasure of the court and perform such duties as the court directs. The state courts administrator's compensation shall be fixed by law.
(2) Duties. The state courts administrator shall supervise the administrative office of the Florida courts, which shall be maintained at such place as directed by the supreme court; shall employ such other personnel as the court deems necessary to aid in the administration of the state courts system; shall represent the state courts system before the legislature and other bodies with respect to matters affecting the state courts system and functions related to and serving the system; shall supervise the preparation and submission to the supreme court, for review and approval, of a tentative budget request for the state courts system and shall appear before the legislature in accordance with the court's directions in support of the final budget request on behalf of the system; shall assist in the preparation of educational and training materials for the state courts system and related personnel, and shall coordinate or assist in the conduct of educational and training sessions for such personnel; shall assist all courts in the development of improvements in the system, and submit to the chief justice and the court appropriate recommendations to improve the state courts system; and shall collect and compile uniform financial and other statistical data or information reflective of the cost, workloads, business, and other functions related to the state courts system. The state courts administrator is the custodian of all records in the administrator's office.
(f) Open Sessions. All sessions of the court shall be open to the public, except proceedings designated as confidential by the court and conference sessions held for the discussion and consideration of pending cases, for the formulation of opinions by the court, and for the discussion or resolution of other matters related to the administration of the state courts system.
(g) Designation of Assigned Judges. When any judge of another court is assigned for temporary service on the supreme court, that judge shall be designated, as author or participant, by name and initials followed by the words "Associate Justice."
RULE 2.210. DISTRICT COURTS OF APPEAL
(a) Internal Government.
(1) Exercise of Powers and Jurisdiction. Three judges shall constitute a panel for and shall consider each case, and the *978 concurrence of a majority of the panel shall be necessary to a decision.
(2) Chief Judge. The chief judge shall be chosen by the judges of the court for a term commencing on July 1 of each odd-numbered year, and shall serve for a term of 2 years. In the event of a vacancy, a successor shall be chosen promptly to serve the balance of the unexpired term. The selection of a chief judge should be based on managerial, administrative, and leadership abilities. The chief judge may be removed by a two-thirds vote of the active judges. The chief judge shall be the administrative officer of the court, responsible for the dispatch of its business, shall have the power to order consolidation of cases, and shall assign cases to the judges for the preparation of opinions, orders, or judgments. If the chief judge is unable to discharge these duties, the judge longest in continuous service or, as between judges with equal continuous service, the one having the longest unexpired term and able to do so, shall perform the duties of chief judge pending the chief judge's return to duty. Judges shall notify the chief judge of any contemplated absence from the court and the reasons therefor.
(b) Clerk.
(1) Appointment. The court shall appoint a clerk who shall hold office at the pleasure of the court and perform such duties as the court directs. The clerk's compensation shall be fixed by law. The clerk's office shall be in the headquarters of the court. The clerk's time shall be devoted to the duties of the office and the clerk shall not engage in the private practice of law while serving as clerk. All court records and the seal of the court shall be kept in the office and the custody of the clerk. The clerk shall not allow any court record to be taken from the clerk's office or the courtroom, except by a judge of the court or upon order of the court.
(2) Records of Proceedings. The clerk shall keep such records as the court may from time to time order or direct. The clerk shall keep a docket or equivalent electronic record of all cases that are brought for review to, or that originate in, the court. Each case shall be numbered in the order that the notice, petition, or other initial pleading originating the proceeding is filed in the court.
(3) Filing Fee. In all cases filed in the court, the clerk shall require the payment of a fee as provided by law at the time the notice, petition, or other initial pleading is filed. The payment shall not be exacted in advance in appeals in which a party has been adjudicated insolvent for the purpose of an appeal or in appeals in which the state is the real party in interest as the moving party. The payment of the fee shall not be required in habeas corpus proceedings or appeals therefrom.
(4) Issuance of Mandate; Recordation and Notification. The clerk shall issue such mandates or process as may be directed by the court. If the court directs that a mandate record shall be maintained, then upon the issuance of any mandate the clerk shall record the issuance in a book or equivalent electronic record kept for that purpose, in which shall be noted the date of issuance and the manner of transmittal of the process. In proceedings in which no mandate is issued, upon final adjudication of the pending cause the clerk shall transmit to the party affected thereby a copy of the court's order or judgment. The clerk shall notify the attorneys of record of the issuance of any mandate or the rendition of any final judgment. The clerk shall furnish without charge to all attorneys of record in any cause a copy of any order or written opinion rendered in such action.
*979 (5) Return of Original Papers. The clerk shall retain all original papers, files, and exhibits transmitted to the court for a period of not less than 30 days after rendition of the opinion or order denying any motion pursuant to Florida Rule of Appellate Procedure 9.330, whichever is later. If no discretionary review proceeding or appeal has been timely commenced in the supreme court to review the court's decision within 30 days, the clerk shall transmit to the clerk of the trial court the original papers, files, and exhibits. If a discretionary review proceeding or appeal has been timely commenced in the supreme court to review the court's decision, the original papers, files, and exhibits shall be retained by the clerk until transmitted to the supreme court or, if not so transmitted, until final disposition by the supreme court and final disposition by the court pursuant to the mandate issued by the supreme court.
(c) Marshal.
(1) Appointment. The court shall appoint a marshal who shall hold office at the pleasure of the court and perform such duties as the court directs. The marshal's compensation shall be fixed by law.
(2) Duties. The marshal shall have power to execute process of the court throughout the district, and in any county therein may deputize the sheriff or a deputy sheriff for such purpose. The marshal shall perform such clerical or ministerial duties as the court may direct or as are required by law. The marshal shall be custodian of the headquarters occupied by the court, whether the headquarters is an entire building or a part of a building.
(d) Open Sessions. All sessions of the court shall be open to the public, except conference sessions held for the discussion and consideration of pending cases, for the formulation of opinions by the court, and for the discussion or resolution of other matters related to the administration of the court.
(e) Designation of Assigned Judges. When any justice or judge of another court is assigned for temporary service on a district court of appeal, that justice or judge shall be designated, as author or participant, by name and initials followed by the words "Associate Judge."
RULE 2.215. TRIAL COURT ADMINISTRATION
(a) Purpose. The purpose of this rule is to fix administrative responsibility in the chief judges of the circuit courts and the other judges that the chief judges may designate. When these rules refer to the court, they shall be construed to apply to a judge of the court when the context requires or permits.
(b) Chief Judge.
(1) The chief judge shall be a circuit judge who possesses administrative ability.
(2) The chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts. The chief judge shall be responsible to the chief justice of the supreme court. The chief judge may enter and sign administrative orders, except as otherwise provided by this rule.
(3) The chief judge shall be the chief judicial officer of the circuit, shall maintain liaison in all judicial administrative matters with the chief justice of the supreme court, and shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organization capable of effecting the prompt disposition of cases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of *980 courtrooms; and mandatory periodic review of the status of the inmates of the county jail. The plan shall be compatible with the development of the capabilities of the judges in such a manner that each judge will be qualified to serve in any division, thereby creating a judicial pool from which judges may be assigned to various courts throughout the state. The administrative plan shall include a consideration of the statistical data developed by the case reporting system. Questions concerning the administration or management of the courts of the circuit shall be directed to the chief justice of the supreme court through the state courts administrator.
(4) The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court's business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge's designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of postconviction or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases a judge qualified to conduct such proceedings under subdivision (b)(10) of this rule. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) The chief judge may designate a judge in any court or court division of circuit or county courts as "administrative judge" of any court or division to assist with the administrative supervision of the court or division. The designee shall be responsible to the chief judge, shall have the power and duty to carry out the responsibilities assigned by the chief judge, and shall serve at the pleasure of the chief judge.
(6) The chief judge may require the attendance of prosecutors, public defenders, clerks, bailiffs, and other officers of the courts, and may require from the clerks of the courts, sheriffs, or other officers of the courts periodic reports that the chief judge deems necessary.
(7) The chief judge shall regulate the use of courtrooms, regularly examine the dockets of the courts under the chief judge's administrative supervision, and require a report on the status of the actions on the dockets. The chief judge may take such action as may be necessary to cause the dockets to be made current. The chief judge shall monitor the status of all pending postconviction or collateral relief proceedings brought by defendants who have been sentenced to death and shall take the necessary actions to assure that such cases proceed without undue delay. On July 1 and October 1, 1996, and on the first day of every January, April, July, and October thereafter, the chief judge shall inform the *981 chief justice of the supreme court of the status of all such pending cases.
(8) The chief judge or the chief judge's designee shall regularly examine the status of every inmate of the county jail.
(9) The chief judge may authorize the clerks of courts to maintain branch county court facilities. When so authorized, clerks of court shall be permitted to retain in such branch court facilities all county court permanent records of pending cases, and may retain and destroy these records in the manner provided by law.
(10) The chief judge shall ensure that no judge presides over a capital case in which the state is seeking the death penalty or collateral proceedings brought by a death row inmate until that judge has served a minimum of 6 months in a felony criminal division and has successfully completed the "Handling Capital Cases" course offered through the Florida College of Advanced Judicial Studies. Each judge must complete the "Handling Capital Cases" course as soon as practicable upon entering the criminal division. Once a judge successfully completes the "Handling Capital Cases" course, the judge must thereafter attend a "refresher" course during each of the subsequent continuing judicial education reporting periods. The chief justice may waive the course requirement in exceptional circumstances at the request of the chief judge. This requirement shall not preclude a judge from presiding in collateral proceedings in a case in which the judge presided over the trial or an earlier collateral proceeding.
(c) Selection. The chief judge shall be chosen by a majority of the circuit and county court judges within the circuit for a term of 2 years commencing on July 1 of each odd-numbered year, or if there is no majority, by the chief justice, for a term of 2 years. The election for chief judge shall be held no sooner than February 1 of the year during which the chief judge's term commences beginning July 1. All elections for chief judge shall be conducted as follows:
(1) All ballots shall be secret.
(2) Any circuit or county judge may nominate a candidate for chief judge.
(3) Proxy voting shall not be permitted.
(4) Any judge who will be absent from the election may vote by secret absentee ballot obtained from and returned to the Trial Court Administrator.
A chief judge may be removed as chief judge by the supreme court, acting as the administrative supervisory body of all courts, or may be removed by a two-thirds vote of the active judges. The purpose of this rule is to fix a 2-year cycle for the selection of the chief judge in each circuit. A chief judge may serve for successive terms. The selection of the chief judge should be based on managerial, administrative, and leadership abilities. A chief judge who is to be temporarily absent shall select an acting chief judge from among the circuit judges. If a chief judge dies, retires, fails to appoint an acting chief judge during an absence, or is unable to perform the duties of the office, the chief justice of the supreme court shall appoint a circuit judge to act as chief judge during the absence or disability, or until a successor chief judge is elected to serve the unexpired term. When the office of chief judge is temporarily vacant pending action within the scope of this paragraph, the duties of court administration shall be performed by the circuit judge having the longest continuous service as a judge or by another circuit judge designated by that judge.
*982 (d) Circuit Court Administrator. Each circuit court administrator shall be selected or terminated by the chief judge subject to concurrence by a majority vote of the circuit and county judges of the respective circuits.
(e) Local Rules and Administrative Orders.
(1) Local court rules as defined in rule 2.120 may be proposed by a majority of the circuit and county judges in the circuit. The judges shall notify the local bar within the circuit of the proposal, after which they shall permit a representative of the local bar, and may permit any other interested person, to be heard orally or in writing on the proposal before submitting it to the supreme court for approval. When a proposed local rule is submitted to the supreme court for approval, the following procedure shall apply:
(A) Local court rule proposals shall be submitted to the supreme court in January of each year. The supreme court may accept emergency proposals submitted at other times.
(B) Not later than February 15 of each year, the clerk of the supreme court shall submit all local court rule proposals to the Supreme Court Local Rules Advisory Committee created by rule 2.140. At the same time, the clerk of the supreme court shall send copies of the proposed rules to the appropriate committees of The Florida Bar. The Florida Bar committees, any interested local bar associations, and any other interested person shall submit any comments or responses that they wish to make to the Supreme Court Local Rules Advisory Committee on or before March 15 of the year.
(C) The Supreme Court Local Rules Advisory Committee shall meet on or before April 15 to consider the proposals and any comments submitted by interested parties. The committee shall transmit its recommendations to the supreme court concerning each proposal, with the reasons for its recommendations, within 15 days after its meeting.
(D) The supreme court shall consider the recommendations of the committee and may resubmit the proposals with modifications to the committee for editorial comment only. The supreme court may set a hearing on any proposals, or consider them on the recommendations and comments as submitted. If a hearing is set, notice shall be given to the chief judge of the circuit from which the proposals originated, the executive director of The Florida Bar, the chair of the Rules of Judicial Administration Committee of The Florida Bar, any local bar associations, and any interested persons who made comments on the specific proposals to be considered. The supreme court shall act on the proposals promptly after the recommendations are received or heard.
(E) If a local court rule is approved by the supreme court, it shall become effective on the date set by that court.
(F) A copy of all local court rules approved by the supreme court shall be indexed and recorded by the clerk of the circuit court in each county of the circuit where the rules are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge of the circuit may provide for the publication of the rules. The clerk of the supreme court shall furnish copies of each approved local court rule to the executive director of The Florida Bar.
(2) Any judge or member of The Florida Bar who believes that an administrative order promulgated under subdivision (b)(2) of this rule is a court rule or a local rule as *983 defined in rule 2.120, rather than an administrative order, may apply to the Supreme Court Local Rules Advisory Committee for a decision on the question. The decisions of the committee concerning the determination of the question shall be reported to the supreme court, and the court shall follow the procedure set forth in subdivision (D) above in considering the recommendation of the committee.
(3) All administrative orders of a general and continuing nature, and all others designated by the chief judge, shall be indexed and recorded by the clerk of the circuit court in each county where the orders are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge shall, on an annual basis, direct a review of all local administrative orders to ensure that the set of copies maintained by the clerk remains current and does not conflict with supreme court or local rules.
(4) All local court rules entered pursuant to this section shall be numbered sequentially for each respective judicial circuit.
(f) Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
(g) Duty to Expedite Priority Cases. Every judge has a duty to expedite priority cases to the extent reasonably possible. Priority cases are those cases that have been assigned a priority status or assigned an expedited disposition schedule by statute, rule of procedure, case law, or otherwise. Particular attention shall be given to all juvenile dependency and termination of parental rights cases, and to cases involving families and children in need of services.
(h) Neglect of Duty. The failure of any judge, clerk, prosecutor, public defender, attorney, court reporter, or other officer of the court to comply with an order or directive of the chief judge shall be considered neglect of duty and shall be reported by the chief judge to the chief justice of the supreme court. The chief justice may report the neglect of duty by a judge to the Judicial Qualifications Commission, and neglect of duty by other officials to the governor of Florida or other appropriate person or body.
(i) Status Conference after Compilation of Record in Death Case. In any proceeding in which a defendant has been sentenced to death, the circuit judge assigned to the case shall take such action as may be necessary to ensure that a complete record on appeal has been properly prepared. To that end, the judge shall convene a status conference with all counsel of record as soon as possible after the record has been prepared pursuant to rule of appellate procedure 9.200(d) but before the record has been transmitted. The purpose of the status conference shall be to ensure that the record is complete.

Court Commentary
1996 Court Commentary. Rule 2.050(h) should be read in conjunction with Florida Rule of Appellate Procedure 9.140(b)(4)(A).
1997 Court Commentary. [Rule 2.050(b)(10)]. The refresher course may be a six-hour block during any Florida Court Education Council approved course offering sponsored by any approved Florida *984 judicial education provider, including the Florida College of Advanced Judicial Studies or the Florida Conference of Circuit Judges. The block must contain instruction on the following topics: penalty phase, jury selection, and rule 3.850 proceedings.
Failure to complete the refresher course during the three-year judicial education reporting period will necessitate completion of the original "Handling Capital Cases" course.
2002 Court Commentary. Recognizing the inherent differences in trial and appellate court dockets, the last sentence of subdivision (g) is intended to conform to the extent practicable with appellate rule 9.146(g), which requires appellate courts to give priority to appeals in juvenile dependency and termination of parental rights cases, and in cases involving families and children in need of services.
RULE 2.220. CONFERENCE OF COUNTY COURT JUDGES
(a) Creation. There shall be a "Conference of County Court Judges of Florida," consisting of the duly commissioned county court judges of the State of Florida.
(b) Purpose. The purpose of the conference shall be:
(1) the betterment of the judicial system of the state;
(2) the improvement of procedure and practice in the several courts; and
(3) to conduct conferences and institutes for continuing judicial education and to provide forums in which the county court judges of Florida may meet and discuss mutual problems and solutions.
(c) Officers. Management of the conference shall be vested in the officers of the conference, an executive committee, and a board of directors.
(1) The officers of the conference shall be:
(A) the president, president-elect, immediate past president, secretary, and treasurer, who shall be elected at large; and
(B) one vice-president elected from each appellate court district.
(2) The executive committee shall consist of the officers of the conference and an executive secretary.
(3) The board of directors shall consist of the executive committee and a member elected from each judicial circuit.
(4) There shall be an annual meeting of the conference.
(5) Between annual meetings of the conference, the affairs of the conference shall be managed by the executive committee.
(d) Authority. The conference may adopt a constitution and by-laws, the provisions of which shall not be inconsistent with this rule.
RULE 2.225. JUDICIAL MANAGEMENT COUNCIL
(a) Creation and Responsibilities. There is hereby created the Judicial Management Council of Florida, which shall be charged with the following responsibilities:
(1) The comprehensive study and formulation of recommendations on issues related to the efficient and effective administration of justice that have statewide impact, affect multiple levels of the court system, or affect multiple constituencies in the court and justice community.
(A) Issues that may be examined by the Judicial Management Council include, but are not limited to:
(i) the organization, jurisdiction, and management of the courts;
*985 (ii) the qualifications, selection process, compensation, disciplinary process, and removal process for judicial officers;
(iii) administrative policies and programs of the court system;
(iv) state and local budgets for the courts and related entities, and the balance of funding between state and local government;
(v) available revenues that are currently or may be used to support the courts, including fines, forfeitures, filing fees, add-ons, surcharges, and liens;
(vi) rules of court and rulemaking process;
(vii) legislative issues, including changes in the statutes or the constitution; and
(viii) the policies, procedures, and programs of other entities that are involved in court proceedings, or otherwise affect the work of the courts.
(B) Issues may become part of the Judicial Management Council's agenda by:
(i) referral from the chief justice;
(ii) referral from the supreme court; or
(iii) identification by the Judicial Management Council on its own initiative based on the recommendations of members; input from judges, the bar, court personnel, or other sources; input from public hearings; referral of issues by the Florida Legislature, either informally or through the passage of legislation; or referral of issues by the governor, cabinet, or executive branch agencies.
(C) The chief justice and the supreme court shall consider referring significant new issues or problems with implications for judicial branch organization, policy, or budgeting to the Judicial Management Council, prior to the creation of any new committees.
(2) The development and recommendation of the long-range strategic plan and quality management and accountability program for the judicial branch, which are required pursuant to article III, section 19, of the Florida Constitution.
(3) The development of recommendations to all Constitutional Revision Commissions.
(4) To review and respond to the work of other commissions, task forces, councils, and committees of the judicial, legislative and executive branches, and The Florida Bar, which may consider matters having policy, funding, or operational implications for the judicial branch and the justice system.
(5) To provide a liaison with private sector entities with an interest in the court system, including the Florida Council of 100.
(b) Schedule of Reports.
(1) The Judicial Management Council shall prepare an annual report on its activities, along with recommendations on substantive legislation and budget resources, which shall be presented to the chief justice and the supreme court on October 1 of each year.
(2) The Judicial Management Council shall prepare a biennial review of the judicial branch's long-range strategic plan and formulate recommendations for a 2-year operational plan based on such review, which shall be presented to the chief justice on July 1 of each even-numbered year.
(3) The Judicial Management Council may prepare other reports as it deems necessary, which shall be presented to the chief justice or the supreme court upon completion.
*986 (c) Supreme Court Action on Recommendation by the Judicial Management Council. The chief justice or the supreme court may take any or all of the following actions on recommendations made by the Judicial Management Council:
(1) Direct that action be taken to influence or change administrative policy, management practices, rules, or programs that are the subject of the recommendations.
(2) Include the recommendation in the State Courts System's legislative agenda or budget requests.
(3) Refer the recommendation back to the Judicial Management Council with an indication that:
(A) the Judicial Management Council shall undertake further study;
(B) the supreme court takes no position on the issue and encourages the Judicial Management Council to take whatever further action on the matter the Judicial Management Council deems appropriate; or
(C) the supreme court disapproves of the recommendation and directs either reassessment of the recommendation or no further action by the Judicial Management Council.
(4) Refer the recommendation to other entities, such as the Florida Legislature, the governor, the cabinet, executive branch agencies, or The Florida Bar, as the supreme court deems appropriate.
(d) Membership and Organization. The membership of the Judicial Management Council shall be appointed with the intention of ensuring diversity and representation of groups involved in or affected by the judicial system.
(1) There shall be 21 official members of the Judicial Management Council, to be appointed by the chief justice, which shall include:
(A) one supreme court justice;
(B) two district court of appeal judges, to be nominated by the Florida Conference of District Court of Appeal Judges;
(C) two circuit court judges, one of whom shall be an active chief judge, to be nominated by the Florida Conference of Circuit Judges;
(D) two county court judges, to be nominated by the Conference of County Court Judges;
(E) one state attorney, to be nominated by the Florida Prosecuting Attorneys Association;
(F) one public defender, to be nominated by the Florida Public Defenders Association;
(G) the attorney general or the attorney general's designee;
(H) one clerk of court, to be nominated by the Florida Association of Court Clerks;
(I) two representatives of The Florida Bar, one of whom shall be a member of the board of governors, to be nominated by the board of governors;
(J) one representative of the governor's legal office, to be designated by the governor;
(K) one member of the Florida Senate and one member of the House of Representatives;
(L) four public members; and
(M) one member of the Florida Council of 100, to be nominated by the Florida Council of 100.
(2) The legislative members shall serve as ad hoc, voting members, whose absence shall not be considered for purposes of *987 determining whether a quorum is present at meetings.
(3) The chief justice may appoint no more than 8 members at large who shall serve as voting members for a term of 3 years.
(4) The chief justice or the chief justice's designee shall serve as chair of the Judicial Management Council.
(5) To ensure continuity through the Judicial Management Council's development of a long range strategic plan for the judicial branch, the original members of the council shall be appointed for a term of 3 years. The members' terms thereafter shall be on a staggered, multi-year basis, to be designated by future administrative orders of the chief justice.
(6) The Judicial Management Council shall establish a committee structure and procedures that ensure broad-based involvement of and input from interested constituencies. The Judicial Council shall have the authority and resources to improve its inclusiveness through a variety of means, such as:
(A) establishing committees or subcommittees that include persons who are not members of the Council but whose input may be needed on selected issues;
(B) referring matters to existing groups or committees, such as committees of The Florida Bar, for comment and recommendations;
(C) conducting focus groups, workshops, and town hall type meetings;
(D) conducting public hearings; and
(E) conducting surveys.
(7) The Judicial Management Council shall explore and recommend appropriate protocols for information sharing and coordination of work by the various committees that have been created by the court system. When appropriate, the Judicial Management Council shall include such committees in the process of developing the long-range strategic plan.
(e) Staff Support and Funding. The Office of the State Courts Administrator shall provide primary staff support to the Judicial Management Council. Adequate staffing and other resources shall be made available to the Office of the State Courts Administrator to ensure the effective and efficient completion of tasks assigned to the Judicial Management Council. Sufficient resources shall also be provided for meetings of the Judicial Management Council and its committees or subcommittees, and other expenses necessary to the satisfactory completion of its work.
RULE 2.230. TRIAL COURT BUDGET COMMISSION
(a) Purpose. The purpose of this rule is to establish a Trial Court Budget Commission that will have the responsibility for developing and overseeing the administration of trial court budgets in a manner which ensures equity and fairness in state funding among the 20 judicial circuits.
(b) Responsibilities. The Trial Court Budget Commission is charged with specific responsibility to:
(1) establish budgeting and funding policies and procedures consistent with judicial branch plans and policies, directions from the supreme court, and in consideration of input from supreme court committees and from the Florida Conference of Circuit Judges and the Florida Conference of County Court Judges;
(2) make recommendations to the supreme court on the trial court component of the annual judicial branch budget request;
(3) advocate for the trial court component of the annual judicial branch budget request and associated statutory changes;
*988 (4) make recommendations to the supreme court on funding allocation formulas and budget implementation and criteria as well as associated accountability mechanisms based on actual legislative appropriations;
(5) monitor trial court expenditure trends and revenue collections to identify unanticipated budget problems and to ensure the efficient use of resources;
(6) recommend statutory and rule changes related to trial court budgets;
(7) develop recommended responses to findings on financial audits and reports from the Supreme Court Inspector General, Auditor General, Office of Program Policy Analysis and Government Accountability, and other governmental entities charged with auditing responsibilities regarding trial court budgeting when appropriate;
(8) recommend to the supreme court trial court budget reductions required by the legislature;
(9) identify potential additional sources of revenue for the trial courts; and
(10) recommend to the supreme court legislative pay plan issues for trial court personnel, except the commission shall not make recommendations as to pay or benefits for judges.
(c) Operational Procedures. The Trial Court Budget Commission will establish operating procedures necessary to carry out its responsibilities as outlined in subdivision (b), subject to final approval by the supreme court. These procedures shall include:
(1) a method for ensuring input from interested constituencies, including the chief judges and trial court administrators of the trial courts, other members of the trial court judiciary, the Judicial Management Council, and other judicial branch committees and commissions; and
(2) a method for appeal of the decisions of the Trial Court Budget Commission. Appeals may be made only by a chief judge on behalf of a circuit. Appeals may be heard only by the Trial Court Budget Commission unless the appeal is based on the failure of the commission to adhere to its operating procedures, in which case the appeal may be made to the supreme court.
(d) Action by Supreme Court or Chief Justice on Recommendations of Trial Court Budget Commission. The supreme court or chief justice, as appropriate, may take any or all of the following actions on recommendations made by the Trial Court Budget Commission:
(1) The adoption of the recommendations of the commission made in accordance with the discharge of its responsibilities listed in subdivision (b) in whole.
(2) The adoption of the recommendations in part and referral of specific issues or questions back to the commission for further study or alternative recommendations.
(e) Membership and Organization. The Trial Court Budget Commission will be composed of 21 voting members appointed by the chief justice who will represent the interests of the trial courts generally rather than the individual interests of a particular circuit or division. The respective chairpersons of the Conference of Circuit Court Judges and the Conference of County Court Judges shall serve as ex officio nonvoting members of the Commission. The chief justice will make appointments to ensure that the broad interests of the trial courts are represented by including members who have experience in different divisions, who have expertise in court operations or administrative matters, *989 and who offer geographic, racial, ethnic, and gender diversity.
(1) The membership must include 14 trial court judges and 7 trial court administrators.
(2) The chief justice will appoint 1 member to serve as chair and 1 member to serve as vice chair, each for a 2-year term.
(3) A supreme court justice will be appointed by the chief justice to serve as supreme court liaison.
(4) No circuit will have more than 2 members on the commission.
(5) The original members of the commission will be appointed as follows:
(A) 7 members shall be appointed for a 2-year term;
(B) 7 members shall be appointed for a 4-year term; and
(C) 7 members shall be appointed for one 6-year term.
All subsequent members will each be appointed for one 6-year term. In the event of a vacancy, the chief justice will appoint a new member to serve for the remainder of the departing member's term.
(6) The commission may establish subcommittees as necessary to satisfactorily carry out its responsibilities. Subcommittees may make recommendations only to the commission as a whole. The chair of the commission may appoint a non-commission member to serve on a subcommittee.
(f) Staff Support and Funding. The Office of the State Courts Administrator will provide primary staff support to the commission. Adequate staffing and resources will be made available to the Office of the State Courts Administrator to ensure the commission is able to fulfill its responsibilities as outlined in the rule. Sufficient resources will also be provided for the commission and its subcommittees to meet and otherwise complete its work.
RULE 2.235. DISTRICT COURT OF APPEAL BUDGET COMMISSION
(a) Purpose. The purpose of this rule is to establish a District Court of Appeal Budget Commission with responsibility for developing and overseeing the administration of district court budgets in a manner which ensures equity and fairness in state funding among the 5 districts.
(b) Responsibilities. The District Court of Appeal Budget Commission is charged with specific responsibility to:
(1) establish budgeting and funding policies and procedures consistent with judicial branch plans and policies, directions from the supreme court, and in consideration of input from supreme court committees;
(2) make recommendations to the supreme court on a unitary district court component of the annual judicial branch budget request;
(3) advocate for the district court component of the annual judicial branch budget request;
(4) make recommendations to the supreme court on funding allocation formulas and/or criteria as well as associated accountability mechanisms based on actual legislative appropriations;
(5) monitor district court expenditure trends and revenue collections to identify unanticipated budget problems and to ensure the efficient use of resources;
(6) recommend statutory and rule changes related to district court budgets;
(7) develop recommended responses to findings on financial audits and reports from the Supreme Court Inspector General, Auditor General, Office of Program Policy *990 Analysis and Government Accountability, and other governmental entities charged with auditing responsibilities regarding district court budgeting when appropriate;
(8) recommend to the supreme court district court budget reductions required by the legislature;
(9) identify potential additional sources of revenue for the district courts; and
(10) recommend to the supreme court legislative pay plan issues for district court personnel.
(c) Operational Procedures. The District Court of Appeal Budget Commission will establish operating procedures necessary to carry out its responsibilities as outlined in subdivision (b), subject to final approval by the supreme court. These procedures shall include:
(1) a method for ensuring input from interested constituencies, including the chief judges, marshals, and clerks of the district courts, other members of the district court judiciary, the Judicial Management Council, and other judicial branch committees and commissions; and
(2) a method for appeal of the decisions of the District Court of Appeal Budget Commission. Appeals may be made only by a chief judge on behalf of the district. Appeals may be heard only by the District Court of Appeal Budget Commission unless the appeal is based on the failure of the commission to adhere to its operating procedures, in which case the appeal may be made to the supreme court.
(d) Action by Supreme Court or Chief Justice on Recommendations of District Court of Appeal Budget Commission. The supreme court or chief justice, as appropriate, may take any or all of the following actions on recommendations made by the District Court of Appeal Budget Commission:
(1) The adoption of the recommendations of the commission made in accordance with the discharge of its responsibilities listed in subdivision (b) in whole.
(2) The adoption of the recommendations in part and referral of specific issues or questions back to the commission for further study or alternative recommendations.
(e) Membership and Organization. The District Court of Appeal Budget Commission will be composed of 5 members appointed by the chief justice who will represent the interests of the district courts generally rather than the individual interests of a particular district.
(1) The membership shall include the chief judge of each district court of appeal, who shall serve for his or her term as chief judge.
(2) The chief justice will appoint 1 member to serve as chair and 1 member to serve as vice chair, each for a one-year term, or until the member's term on the commission expires.
(3) The commission may establish subcommittees as necessary to satisfactorily carry out its responsibilities. Subcommittees may make recommendations only to the commission as a whole. The chair of the commission may appoint a non-commission member to serve on a subcommittee.
(f) Staff Support and Funding. The Office of the State Courts Administrator will provide primary staff support to the commission. Adequate staffing and resources will be made available to the Office of the State Courts Administrator to ensure the commission is able to fulfill its responsibilities as outlined in this rule. Sufficient resources will also be provided *991 for the commission and its subcommittees to meet and otherwise complete its work.
RULE 2.240. DETERMINATION OF NEED FOR ADDITIONAL JUDGES
(a) Purpose. The purpose of this rule is to set forth uniform criteria used by the supreme court in determining the need for additional judges, except supreme court justices, and the necessity for decreasing the number of judges, pursuant to article V, section 9, Florida Constitution. These criteria form the primary basis for the supreme court's determination of need for additional judges. Unforeseen developments, however, may have an impact upon the judiciary resulting in needs which cannot be foreseen or predicted by statistical projections. The supreme court, therefore, may also consider any additional information found by it to be relevant to the process. In establishing criteria for the need for additional appellate court judges, substantial reliance has been placed on the findings and recommendations of the Commission on District Court of Appeal Performance and Accountability. See In re Report of the Comm'n on Dist. Court of Appeal Performance and Accountability Rule of Judicial Admin. 2.035, 933 So.2d 1136 (Fla.2006).
(b) Criteria.
(1) Trial Courts.
(A) The following thresholds have been established based upon caseload statistics supplied to the state courts administrator by the clerks of the circuit courts. Courts either at or projected to be at the thresholds are presumed to have a need for one or more additional judges. The thresholds are not an optimal level but reflect that the courts are operating above capacity.
(i) The circuit court threshold is 1,865 case filings per circuit judge. These case filings include circuit criminal (includes worthless checks), civil (includes habeas corpus), juvenile dependency and delinquency, domestic relations (including child support), probate, guardianship, and mental health cases.
(ii) The county court threshold is 6,114 case filings per county judge. These case filings include criminal misdemeanor, county civil (including small claims and landlord-tenant), violations of county or municipal ordinances, DUI, and other criminal traffic cases; they do not include worthless check cases.
(B) Other factors may be utilized in the determination of the need for one or more additional judges. These other factors may indicate that need for an additional judge(s) even though a court may not have achieved the presumptive threshold. Conversely, the absence of these other factors may mitigate the need for one or more additional judges. These other factors include:
(i) County judge availability to serve and county judge service in circuit court.
(ii) The use and availability of senior judges to serve on a particular court.
(iii) The availability and use of supplemental hearing officers.
(iv) The extent of use of alternative dispute resolution.
(v) The number of jury trials.
(vi) Foreign language interpretations.
(vii) The geographic size of a circuit, including travel times between courthouses in a particular jurisdiction.
(viii) Law enforcement activities in the court's jurisdiction, including any substantial commitment of additional resources for state attorneys, public defenders, and local law enforcement.
*992 (ix) The availability and use of case-related support staff and case management policies and practices.
(x) The nature and complexity of cases coming before the courts in the jurisdiction.
(xi) Caseload trends.
(2) District Courts of Appeal.
(A) The criteria for determining the need to certify the need for increasing or decreasing the number of judges on a district court of appeal shall include the following factors:
(i) workload factors to be considered include: trends in case filings; trends in changes in case mix; trends in the backlog of cases ready for assignment and disposition; trends in the relative weight of cases disposed on the merits per judge; and changes in statutes, rules of court, and case law that directly or indirectly impact judicial workload.
(ii) efficiency factors to be considered include: a court's ability to stay current with its caseload, as indicated by measurements such as trend in clearance rate; trends in a court's percentage of cases disposed within the time standards set forth in the Rules of Judicial Administration and explanation/justification for cases not resolved within the time standards; and a court's utilization of resources, case management techniques and technologies to maximize the efficient adjudication of cases, research of legal issues, and preparation and distribution of decisions.
(iii) effectiveness factors to be considered include the extent to which each judge has adequate time to: thoroughly research legal issues, review briefs and memoranda of law, participate in court conferences on pending cases, hear and dispose of motions, and prepare correspondence, orders, judgments and opinions; expedite appropriate cases; prepare written opinions when warranted; develop, clarify, and maintain consistency in the law within that district; review all decisions rendered by the court; perform administrative duties relating to the court; and participate in the administration of the justice system through work in statewide committees.
(iv) professionalism factors to be considered include: the extent to which judges report that they have time to participate, including teaching, in education programs designed to increase the competency and efficiency of the judiciary and justice system as well as the competency of lawyers; provide guidance and instruction for the professional development of court support staff; and participate in appropriate activities of the legal profession at both the state and local levels to improve the relationship between the bench and bar, to enhance lawyer professionalism, and to improve the administration of justice.
(B) The court will presume that there is a need for an additional appellate court judgeship in any district for which a request is made and where the relative weight of cases disposed on the merits per judge would have exceeded 280 after application of the proposed additional judge(s).
(i) The relative weight of cases disposed on the merits shall be determined based upon case disposition statistics supplied to the state courts administrator by the clerks of the district courts of appeal, multiplied by the relative case weights established pursuant to subdivision (b)(2)(B)(ii), and divided by 100.
(ii) The Commission on District Court of Appeal Performance and Accountability shall review the workload trends of the district courts of appeal and *993 consider adjustments in the relative case weights every four years.
(c) Additional Trial Court Workload Factors. Because summary statistics reflective of the above criteria do not fully measure judicial workload, the supreme court will receive and consider, among other things, information about the time to perform and volume of the following activities, which also comprise the judicial workload of a particular jurisdiction:
(1) review appellate court decisions;
(2) research legal issues;
(3) review briefs and memoranda of law;
(4) participate in court conferences on pending cases;
(5) hear and dispose of motions;
(6) prepare correspondence, orders, judgments, and decisional opinions;
(7) review presentence investigative reports and predispositional reports in delinquency and dependency cases;
(8) review petitions and motions for post-conviction relief;
(9) perform administrative duties relating to the court;
(10) participate in meetings with those involved in the justice system; and
(11) participate in educational programs designed to increase the competency and efficiency of the judiciary.
(d) Certification Process. The process by which certification of the need to increase or decrease the number of judges shall include:
(1) The state courts administrator will distribute a compilation of summary statistics and projections to each chief judge at a time designated by the chief justice.
(2) Each chief judge shall submit to the chief justice a request for any increase or decrease in the number of judges:
(A) Trial Courts. Each chief judge will then consider these criteria, additional workload factors, and summary statistics, and submit to the chief justice a request for any increases or decreases under article V, section 9, of the Florida Constitution that the chief judge feels are required.
(B) District Courts. Each chief judge will then consider the criteria of this rule and the summary statistics; if a new judge is requested, the chief judge shall prepare a report showing the need for a new judge based upon the application of the criteria in this rule.
(i) Any request for a new district court judge shall be submitted to the District Court of Appeal Budget Commission for review and approval.
(ii) The chief judge of a district court of appeal shall submit the report showing the need together with the approval of the District Court of Appeal Budget Commission to the chief justice.
(3) The chief justice and the state courts administrator may then visit the chief judge and other representatives of the court submitting the request as well as representatives of The Florida Bar and the public to gather additional information and clarification about the need in the particular jurisdiction.
(4) The chief justice will submit recommendations to the supreme court, which will thereafter certify to the legislature its findings and recommendations concerning such need.

Court Commentary
1983 Adoption. Article V, section 9, of the Florida Constitution authorizes the establishment, by rule, of uniform criteria for the determination of the need for additional judges, except supreme court justices, *994 the necessity for decreasing the number of judges and for increasing, decreasing, or redefining appellate districts and judicial circuits. Each year since the adoption of article V in 1972, this court, pursuant to section 9, has certified its determination of need to the legislature based upon factors and criteria set forth in our certification decisions. This rule is intended to set forth criteria and workload factors previously developed, adopted, and used in this certification process, as summarized and specifically set forth in In re Certificate of Judicial Manpower, 428 So.2d 229 (Fla. 1983); In re Certificate of Judicial Manpower, 396 So.2d 172 (Fla.1981); and In re Certification, 370 So.2d 365 (Fla.1979).
2004 Amendment. Subdivision (b)(2) was amended to provide more specific criteria and workload factors to be used in determining the need for increasing or decreasing the number of judges on the District Courts of Appeal. In addition, the caseload level at which the court will presume that there is a need for an additional appellate judge has been increased from 250 to 350 filings per judge.
2006 Amendment. Subdivision (a) is amended to be consistent with the 2006 adoption of rule 2.036 relating to the criteria for determining the necessity and for increasing, decreasing, or redefining appellate districts and judicial circuits, pursuant to article V, section 9, Florida Constitution. The Court adopts the Commission on District Court of Appeal Performance and Accountability's conclusion that a single case filing threshold is insufficient to capture the intricacies that make up judicial workload in the district courts. The Commission's alternative to the 350-filings-per-judge threshold is a weighted case dispositions per judge, which the Commission determined to be a meaningful measure of judicial workload.
The relative weighted caseload is determined by surveying a representative sample of judges on the relative degree of judicial effort put into each category of cases based upon an agreed typical case having a value of 100. Each category was assigned a relative weight number based upon the statewide average of the weight calculated through the survey. These weights were then applied to each court's dispositions on the merits to determine the weighted caseload value and divided by 100.
This approach accommodates the important distinction between the number of cases filed and the judicial effort required to dispose of those cases. While the number of cases continues to increase, trends in the types of cases filed have dramatically changed the nature of the work that the district court judges handle. The weighted caseload approach not only accommodates the differences in types of cases by measuring their relative workload demands for judges, but it also accommodates the work performed by legal support staff.
Subdivision (b)(2)(B) establishes a presumption that the relative weight of cases disposed on the merits should fall below 280 per judge. Chief judges must consider the impact that the addition of a judge would have on this measure when applied to their courts' dispositions on the merits for the previous year.
Every four years the Commission will measure the relative judicial effort associated with the cases disposed on the merits for the year immediately preceding. This will be accomplished by asking a representative sample of judges to approximate the relative weight of cases in relation to a mid-ranked case. The resulting weights will then be applied to each court's dispositions on the merits to determine the weighted caseload value per judge.
*995 RULE 2.241. DETERMINATION OF THE NECESSITY TO INCREASE, DECREASE, OR REDEFINE APPELLATE DISTRICTS
(a) Purpose. The purpose of this rule is to establish uniform criteria for the supreme court's determination of necessity for increasing, decreasing, or redefining appellate districts as required by Article V, section 9, of the Florida constitution. This rule also provides for an assessment committee and a certification process to assist the court both in certifying to the legislature its findings and recommendations concerning such need and in making its own rules affecting appellate court structure and jurisdiction.
(b) Assessment Committee. At least once during every eight-year period, beginning after review year 2006, the chief justice shall appoint a committee that shall assess the capacity of the district courts to effectively fulfill their constitutional and statutory duties. The committee shall make a recommendation to the supreme court concerning the decisions that it should make during the process described in subdivision (c).
(1) The assessment committee shall consist of three members from each district: one attorney, one district judge, and one circuit judge.
(2) The committee should be appointed no later than August 31 of the year prior to the review year. It must report its recommendations to the chief justice in writing no later than July 1 of the review year.
(3) The chief justice shall select the chair of the committee.
(4) Prior to the preparation of its report, the committee shall solicit written input from the public and shall hold at least one public hearing.
(5) The Office of the State Courts Administrator, in consultation with the clerks and marshals of the district courts of appeal, shall provide staff support to the committee.
(6) The chief justice shall submit the committee's recommendations to the supreme court. On or before November 15 of the review year, the supreme court shall certify to the legislature its findings and recommendations.
(c) Certification Process. The certification process balances the potential impact and disruption caused by changes in appellate districts against the need to address circumstances that limit the quality and efficiency of, and public confidence in, the appellate review process. Given the impact and disruption that can arise from any alteration in judicial structure, prior to recommending a change in districts, the assessment committee and the supreme court shall consider less disruptive adjustments including, but not limited to, the addition of judges, the creation of branch locations, geographic or subject-matter divisions within districts, deployment of new technologies, and increased ratios of support staff per judge.
(1) The supreme court shall certify a necessity to increase, decrease, or redefine appellate districts when it determines that the appellate review process is adversely affected by circumstances that present a compelling need for the certified change.
(2) The supreme court may certify a necessity to increase, decrease, or redefine appellate districts when it determines that the appellate review process would be improved significantly by the certified change.
(d) Criteria. The following criteria shall be considered by the supreme court and the assessment committee:
*996 (1) Effectiveness. The factors to be considered for this criterion are the extent to which:
(A) each court expedites appropriate cases;
(B) each court's workload permits its judges to prepare written opinions when warranted;
(C) each court functions in a collegial manner;
(D) each court's workload permits its judges to develop, clarify, and maintain consistency in the law within that district, including consistency between written opinions and per curiam affirmances without written opinions;
(E) each court's workload permits its judges to harmonize decisions of their court with those of other district courts or to certify conflict when appropriate;
(F) each court's workload permits its judges to have adequate time to review all decisions rendered by the court;
(G) each court is capable of accommodating changes in statutes or case law impacting workload or court operations; and
(H) each court's workload permits its judges to serve on management committees for that court and the judicial system.
(2) Efficiency. The factors to be considered for this criterion are the extent to which:
(A) each court stays current with its caseload, as indicated by measurements such as the clearance rate;
(B) each court adjudicates a high percentage of its cases within the time standards set forth in the Rules of Judicial Administration and has adequate procedures to ensure efficient, timely disposition of its cases; and
(C) each court utilizes its resources, case management techniques, and other technologies to improve the efficient adjudication of cases, research of legal issues, and preparation and distribution of decisions.
(3) Access to Appellate Review. The factors to be considered for this criterion are the extent to which:
(A) litigants, including self-represented litigants, have meaningful access to a district court for mandatory and discretionary review of cases, consistent with due process;
(B) litigants are afforded efficient access to the court for the filing of pleadings and for oral argument when appropriate; and
(C) orders and opinions of a court are available in a timely and efficient manner.
(4) Professionalism. The factors to be considered for this criterion are the extent to which:
(A) each court's workload permits its judges to have adequate time and resources to participate in continuing judicial education opportunities and to stay abreast of the law in order to maintain a qualified judiciary;
(B) each court is capable of recruiting and retaining qualified staff attorneys, clerk's office staff, and other support staff; and
(C) each court's staff has adequate time to participate in continuing education and specialized training opportunities.
(5) Public Trust and Confidence. The factors to be considered for this criterion are the extent to which:
(A) each court's workload permits its judges to have adequate time to conduct outreach to attorneys and the general public within the district;
*997 (B) each court provides adequate access to oral arguments and other public proceedings for the general public within its district;
(C) each court's geographic territory fosters public trust and confidence;
(D) each court's demographic composition fosters public trust and confidence; and
(E) each court attracts an adequate, diverse group of well-qualified applicants for judicial vacancies within its district, including applicants from all circuits within the district.
District Court of Appeal Workload and Jurisdiction Committee Notes 2006 Adoption. Article V, section 9 of the Florida constitution states that:
The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts. If the supreme court finds that a need exists for . . . increasing, decreasing or redefining appellate districts . . ., it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.
(Emphasis added.) Thus, the constitution uses only "need" when describing the uniform criteria for certifying additional judges, but uses both "necessity" and "need" when describing the uniform criteria for increasing, decreasing, or redefining appellate districts. The supreme court has never determined whether this language compels differing tests for the two certifications. Subdivision (c) of this rule uses the phrase "certify a necessity." The Committee on District Court of Appeal Workload and Jurisdiction determined that the two standards set forth in that subdivision recognize the supreme court's obligation to recommend a change to the structure of the district courts when circumstances reach the level of necessity that compels a change, but also recognize the court's discretion to recommend a change to the structure of the district courts when improvements are needed.
The criteria set forth in this rule are based on studies of the workload, jurisdiction, and performance of the appellate courts, and the work of the Committee on District Court of Appeal Workload and Jurisdiction in 2005. In establishing these criteria, substantial reliance was placed on empirical research conducted by judicial branch committees and on other statistical data concerning cases, caseloads, timeliness of case processing, and manner for disposition of cases, collected by the Office of the State Courts Administrator Office as required by section 25.075, Florida Statutes (2004), and Florida Rule of Judicial Administration 2.030(e)(2).
The workload and jurisdiction committee considered the impact of computer technology on appellate districts. It is clear that, at this time or in the future, technology can be deployed to allow litigants efficient access to a court for filing of pleadings and for participation in oral argument, and that it can expand the general public's access to the courts. It is possible that technology will substantially alter the appellate review process in the future and that appellate courts may find that technology permits or even requires different districting techniques. This rule was designed to allow these issues to be addressed by the assessment committee and the supreme court without mandating any specific approach.
The five basic criteria in subdivision (d) are not listed in any order of priority. Thus, for example, the workload and jurisdiction *998 committee did not intend efficiency to be a more important criterion than engendering public trust and confidence.
Subdivision (d)(2)(A) recognizes that the court currently provides the legislature with an annual measurement of the appellate courts' "clearance rate," which is the ratio between the number of cases that are resolved during a fiscal year and the new cases that are filed during the same period. Thus, a clearance rate of one hundred percent reflects a court that is disposing of pending cases at approximately the same rate that new cases arrive. Given that other measurements may be selected in the future, the rule does not mandate sole reliance on this measurement.
Subdivision (d)(5)(E) recognizes that a district court's geographic territory may be so large that it limits or discourages applicants for judicial vacancies from throughout the district and creates the perception that a court's judges do not reflect the makeup of the territory.
RULE 2.245. CASE REPORTING SYSTEM FOR TRIAL COURTS
(a) Reporting. The clerk of the circuit court shall report the activity of all cases before all courts within the clerk's jurisdiction to the supreme court in the manner and on the forms established by the office of the state courts administrator and approved by order of the court. In those jurisdictions where separate offices of the clerk of the circuit court and clerk of the county court have been established by law, the clerk of the circuit court shall report the activity of all cases before the circuit court, and the clerk of the county court shall report the activity of all cases before the county court.
(b) Uniform Case Numbering System.
(1) The clerk of the circuit court and the clerk of the county court, where that separate office exists, shall use the Uniform Case Numbering System. The uniform case number shall appear upon the case file, the docket and minute books (or their electronic equivalent), and the complaint.
(2) The office of the state courts administrator shall distribute to the respective clerks of the circuit and county courts appropriate instructions regarding the nature and use of the Uniform Case Numbering System.
RULE 2.250. TIME STANDARDS FOR TRIAL AND APPELLATE COURTS AND REPORTING REQUIREMENTS
(a) Time Standards. The following time standards are hereby established as a presumptively reasonable time period for the completion of cases in the trial and appellate courts of this state. It is recognized that there are cases that, because of their complexity, present problems that cause reasonable delays. However, most cases should be completed within the following time periods:
(1) Trial Court Time Standards.
(A) Criminal.
Felony180 days (arrest to final disposition)
Misdemeanor90 days (arrest to final disposition)
(B) Civil.
Jury cases18 months (filing to final disposition)
Non-jury cases12 months (filing to final disposition)
Small claims95 days (filing to final disposition)
(C) Domestic Relations.
Uncontested90 days (filing to final disposition)
Contested180 days (filing to final disposition)
*999 (D) Probate.
Uncontested, no federal estate tax return12 months (from issuance of letters of administration to final discharge)
Uncontested, with federal estate tax return12 months (from the return's due date to final discharge)
Contested24 months (from filing to final discharge)
(E) Juvenile Delinquency.
Disposition hearing120 days (filing of petition or child being taken into custody to hearing)
Disposition hearing (child detained)36 days (date of detention to hearing)
(F) Juvenile Dependency.
Disposition hearing (child sheltered)88 days (shelter hearing to disposition)
Disposition hearing (child not sheltered) 120 days (filing of petition for dependency to hearing)
(G) Permanency Proceedings.
Permanency hearing12 months (date child is sheltered to hearing)
(2) Supreme Court and District Courts of Appeal Time Standards: Rendering a decision within180 days of either oral argument or the submission of the case to the court panel for a decision without oral argument
(3) Florida Bar Referee Time Standards: Report of refereewithin 180 days of being assigned to hear the case
(4) Circuit Court Acting as Appellate Court:
Ninety days from submission of the case to the judge for review
(b) Reporting of Cases. The time standards require that the following monitoring procedures be implemented:
All pending cases in circuit and district courts of appeal exceeding the time standards shall be listed separately on a report submitted quarterly to the chief justice. The report shall include for each case listed the case number, type of case, case status (active or inactive for civil cases and contested or uncontested for domestic relations and probate cases), the date of arrest in criminal cases, and the original filing date in civil cases. The Office of the State Courts Administrator will provide the necessary forms for submission of this data. The report will be due on the 15th day of the month following the last day of the quarter.
RULE 2.255. STATEWIDE GRAND JURY
(a) Procedure. The chief judge of each judicial circuit shall cause a list of those persons whose names have been drawn and certified for jury duty in each of the counties within that circuit to be compiled. The lists shall be taken from the male and female population over the age of 18 years and having the other constitutional and statutory qualifications for jury duty in this state not later than the last day of the first week of December of each year. From the lists so compiled, the chief judge shall cause to be selected, by lot and at random, and by any authorized method including mechanical, electronic, or electrical device, a list of prospective grand jurors from each county whose number shall be determined on the basis of 3 jurors for each 3,000 residents or a fraction thereof in each county. The lists from which the names are drawn may be, but are not required to be, the same lists from which petit and grand juries are drawn in each county and circuit. After compilation, the statewide grand jury lists shall be submitted to the state courts administrator not later than February 15 of each year.
*1000 (b) Population. For the purposes of this rule, the population of each county shall be in accordance with the latest United States Decennial Census as set forth in the Florida Statutes.
(c) Excuses.
(1) The judge appointed to preside over the statewide grand jury may issue an order appointing the chief judge of the judicial circuit where a prospective grand juror resides to determine whether service on the statewide grand jury will result in an unreasonable personal or financial hardship because of the location or projected length of the grand jury investigation.
(2) The chief judge of the circuit shall determine whether a prospective grand juror fails to meet the qualifications of a juror in the county where the person resides. The determination shall be made only for those prospective grand jurors who contact the chief judge and request disqualification.
(3) The chief judge of the circuit shall excuse any prospective grand juror who requests and is qualified for exemption from grand jury service pursuant to general law, or from service as a juror in the county where the person resides. The chief judge shall inform the judge appointed to preside over the statewide grand jury without delay of any determination.
RULE 2.260. CHANGE OF VENUE
(a) Preliminary Procedures. Prior to entering an order to change venue to a particular circuit in a criminal case or in any other case in which change of venue will likely create an unusual burden for the transferee circuit, the chief judge in the circuit in which the case originated shall contact the chief judge in the circuit to which the case is intended to be moved to determine the receiving county's ability to accommodate the change of venue. It is the intent of this rule that the county identified to receive the case shall do so unless the physical facilities or other resources in that county are such that moving the case to that county would either create an unsafe situation or adversely affect the operations of that court. Any conflict between the circuits regarding a potential change of venue shall be referred to the chief justice of the Florida Supreme Court for resolution.
(b) Presiding Judge. The presiding judge from the originating court shall accompany the change of venue case, unless the originating and receiving courts agree otherwise.
(c) Reimbursement of Costs. As a general policy the county in which an action originated shall reimburse the county receiving the change of venue case for any ordinary expenditure and any extraordinary but reasonable and necessary expenditure that would not otherwise have been incurred by the receiving county. For purposes of this section, ordinary expenditure, extraordinary expenditure, and nonreimbursable expenditure are defined as follows:
(1) Ordinary expenditures include:
(A) juror expenses not reimbursed by the State of Florida;
(B) court reporter expenses, including appearances by either official or freelance reporters, transcripts, and other expenses associated with the creation of a court record;
(C) court interpreters;
(D) maintenance of evidence, including the cost of handling, storing, or maintaining the evidence beyond the expenses normally incurred by the receiving county;
(E) services and supplies purchased as a result of the change of venue;
*1001 (F) overtime expenditures for regular court and clerk staff attributable to the change of venue; and
(G) trial-related expenses, including conflict attorney fees; all expert, law enforcement, or ordinary witness costs and expenses; and investigator expenses.
(2) Extraordinary but reasonable and necessary expenses include:
(A) security-related expenditures, including overtime for security personnel;
(B) facility remodeling or renovation; and
(C) leasing or renting of space or equipment.
Except in emergencies or unless it is impracticable to do so, a receiving county should give notice to the chief judge and clerk of the county in which the action originated before incurring any extraordinary expenditures.
(3) Nonreimbursable expenses include:
(A) normal operating expenses, including the overhead of the receiving county; and
(B) equipment that is purchased and kept by the receiving county that can be used for other purposes or cases.
(d) Documentation of Costs. No expenses shall be submitted for reimbursement without supporting documentation, such as a claim, invoice, bill, statement, or time sheet. Any required court order or approval of costs shall also be sent to the originating court.
(e) Timing of Reimbursement. Unless both counties agree to other terms, reimbursement of all expenses by the originating county shall be paid or disputed in writing on or before the sixtieth day after the receipt of the claim for reimbursement. Payment of a disputed amount shall be made on or before the sixtieth day after the resolution of this dispute. Any amount subject to dispute shall be expeditiously resolved by authorized representatives of the court administrator's office of the originating and receiving counties.
(f) Media Relations. Procedures to accommodate the media shall be developed by the receiving county immediately upon notice of the change of venue when the change of venue is reasonably expected to generate an unusual amount of publicity. These procedures must be approved by the chief judge of the receiving circuit and implemented pursuant to administrative order by the presiding judge. The presiding judge shall obtain the concurrence of the chief judge before entering any orders that vary from or conflict with existing administrative orders of the receiving circuit.
(g) Case File. The clerk of the circuit court in the originating county shall forward the original case file to the clerk in the receiving county. The receiving clerk shall maintain the file and keep it secure until the trial has been concluded. During the trial, any documents or exhibits that have been added shall be properly marked and added to the file in a manner consistent with the policy and procedures of the receiving county. After the conclusion of the trial, the file shall be returned to the clerk in the county of origin.
RULE 2.265. MUNICIPAL ORDINANCE VIOLATIONS
(a) References to Abolished Municipal Courts. All references to a municipal court or municipal judge in rules promulgated by the supreme court, in the Florida Statutes, and in any municipal ordinance shall be deemed to refer, respectively, to the county court or county court judge.
(b) Costs in County Courts. The chief judge of a circuit shall by administrative *1002 order establish a schedule of costs, in conformity with any provisions of law, to be assessed against a defendant in the county court and paid to the county for violations of municipal ordinances which are prosecuted in county court. The costs shall be assessed as a set dollar amount per conviction, not to exceed $50 excluding any other statutory costs.
(c) Collection of Outstanding Fines. All cases for which outstanding fines, civil penalties, and costs are being collected by a municipality shall be retained by the municipality until collected or until the offender defaults on payment. If a default occurs, the municipality may institute summary claims proceedings to collect the outstanding fines.
(d) Judicial Notice of Municipal Ordinances. The judges of the county courts may take judicial notice of any municipal ordinance if a certified copy of the ordinance has been filed in the office of the clerk of circuit court or, in those counties having a clerk of the county court, filed in that office, and if a certified copy of the ordinance is presented to the court.
(e) Style of Municipal Ordinance Cases. All prosecutions for violations of municipal ordinances in county court shall have the following style: City of .................... v. ....................

PART III. JUDICIAL OFFICERS
RULE 2.310. JUDICIAL DISCIPLINE, REMOVAL, RETIREMENT, AND SUSPENSION
(a) Filing. Any recommendations to the supreme court from the Judicial Qualifications Commission pursuant to article V, section 12, of the Florida Constitution shall be in writing. The original and 7 copies shall be filed with the clerk of the court, and a copy shall be served expeditiously on the justice or judge against whom action is sought.
(b) Procedure.
(1) Promptly upon the filing of a recommendation from the commission, the court shall determine whether the commission's recommendation complies with all requirements of the constitution and the commission's rules. Upon determining that the recommendation so complies, and unless the court otherwise directs, an order shall issue directing the justice or judge to show cause in writing why the recommended action should not be taken.
(2) The justice or judge may file a response in writing within the time set by the court in its order to show cause, and the commission may serve a reply within 20 days from service of the response.
(3) If requested by the commission, or by a justice or judge at the time of filing a response, the court may allow oral argument on the commission's recommendation.
(c) Costs. The supreme court may award reasonable and necessary costs, including costs of investigation and prosecution, to the prevailing party. Neither attorneys' fees nor travel expenses of commission personnel shall be included in an award of costs. Taxable costs may include:
(1) court reporters' fees, including per diem fees, deposition costs, and costs associated with the preparation of the transcript and record; and
(2) witness expenses, including travel and out-of-pocket expenses.
RULE 2.320. CONTINUING JUDICIAL EDUCATION
(a) Purpose. This rule sets forth the continuing education requirement for all judges in the state judicial system.
*1003 (b) Education Requirements.
(1) Applicability. All Florida county, circuit, and appellate judges and Florida supreme court justices shall comply with these judicial education requirements. Retired judges who have been approved by the supreme court to be assigned to temporary active duty as authorized by section 25.073, Florida Statutes (1991), shall also comply with the judicial education requirement.
(2) Minimum Requirements. Each judge and justice shall complete a minimum of 30 credit hours of approved judicial education programs every 3 years. Two hours must be in the area of judicial ethics. In addition to the 30-hour requirement, every judge new to a level of trial court must complete the Florida Judicial College program in that judge's first year of judicial service following selection to that level of court; every new appellate court judge or justice must, within 2 years following selection to that level of court, complete an approved appellate-judge program. Credit for teaching a course for which mandatory judicial education credit is available will be allowed on the basis of 2 1/2 hours' credit for each instructional hour taught, up to a maximum of 5 hours per year.
(3) Mediation Training. Prior to conducting any mediation, a senior judge shall have completed a minimum of one judicial education course offered by the Florida Court Education Council. The course shall specifically focus on the areas where the Code of Judicial Conduct or the Florida Rules for Certified and Court-Appointed Mediators could be violated.
(c) Course Approval. The Florida Court Education Council, in consultation with the judicial conferences, shall develop approved courses for each state court jurisdiction. Courses offered by other judicial and legal education entities must be approved by the council before they may be submitted for credit.
(d) Waiver. The Florida Court Education Council is responsible for establishing a procedure for considering and acting upon waiver and extension requests on an individual basis.
(e) Reporting Requirements and Sanctions. The Florida Court Education Council shall establish a procedure for reporting annually to the chief justice on compliance with this rule. Each judge shall submit to the Legal Affairs and Education Division of the Office of the State Courts Administrator an annual report showing the judge's attendance at approved courses. Failure to comply with the requirements of this rule will be reported to the chief justice of the Florida supreme court for such administrative action as deemed necessary. The chief justice may consider a judge's or justice's failure to comply as neglect of duty and report the matter to the Judicial Qualifications Commission.
RULE 2.330. DISQUALIFICATION OF TRIAL JUDGES
(a) Application. This rule applies only to county and circuit judges in all matters in all divisions of court.
(b) Parties. Any party, including the state, may move to disqualify the trial judge assigned to the case on grounds provided by rule, by statute, or by the Code of Judicial Conduct.
(c) Motion. A motion to disqualify shall:
(1) be in writing;
(2) allege specifically the facts and reasons upon which the movant relies as the grounds for disqualification; and
*1004 (3) be sworn to by the party by signing the motion under oath or by a separate affidavit.
The attorney for the party shall also separately certify that the motion and the client's statements are made in good faith. In addition to filing with the clerk, the movant shall immediately serve a copy of the motion on the subject judge as set forth in Florida Rule of Civil Procedure 1.080.
(d) Grounds. A motion to disqualify shall show:
(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or
(2) that the judge before whom the case is pending, or some person related to said judge by consanguinity or affinity within the third degree, is a party thereto or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in the cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to the cause.
(e) Time. A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record, provided that it is also promptly reduced to writing in compliance with subdivision (c) and promptly filed. A motion made during hearing or trial shall be ruled on immediately.
(f) DeterminationInitial Motion. The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
(g) DeterminationSuccessive Motions. If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (d)(1), a successor judge shall not be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may rule on the truth of the facts alleged in support of the motion.
(h) Prior Rulings. Prior factual or legal rulings by a disqualified judge may be reconsidered and vacated or amended by a successor judge based upon a motion for reconsideration, which must be filed within 20 days of the order of disqualification, unless good cause is shown for a delay in moving for reconsideration or other grounds for reconsideration exist.
(i) Judge's Initiative. Nothing in this rule limits the judge's authority to enter an order of disqualification on the judge's own initiative.
(j) Time for Determination. The judge shall rule on a motion to disqualify immediately, but no later than 30 days after the service of the motion as set forth in subdivision (c). If not ruled on within 30 days of service, the motion shall be deemed granted and the moving party may seek an order from the court directing the clerk to reassign the case.

*1005 PART IV. JUDICIAL PROCEEDINGS AND RECORDS
RULE 2.410. POSSESSION OF COURT RECORDS
No person other than judges and authorized court employees shall remove court records as defined in rule 2.430 from the clerk's office except by order of the chief judge or chief justice upon a showing of good cause.

Court Commentary
1996 Adoption. This rule was written as a result of the problems being encountered in the removal of files from clerks' offices. While the purpose of the rule is to discourage the removal of court files, it is not intended to prohibit chief judges or the chief justice from issuing for good cause a general order providing that attorneys or authorized individuals may be allowed to check out files on a routine basis to assist in the administrative efficiency of a court. We note that section 28.13, Florida Statutes (1995), similarly prohibits the removal of files from clerks' offices.
RULE 2.420. PUBLIC ACCESS TO JUDICIAL BRANCH RECORDS
(a) Scope and Purpose. Subject to the rulemaking power of the Florida Supreme Court provided by article V, section 2, Florida Constitution, the following rule shall govern public access to the records of the judicial branch of government. The public shall have access to all records of the judicial branch of government, except as provided below.
(b) Definitions.
(1) "Records of the judicial branch" are all records, regardless of physical form, characteristics, or means of transmission, made or received in connection with the transaction of official business by any judicial branch entity and consist of:
(A) "court records," which are the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, videotapes, or stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes, or stenographic tapes of court proceedings; and
(B) "administrative records," which are all other records made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business by any judicial branch entity.
(2) "Judicial branch" means the judicial branch of government, which includes the state courts system, the clerk of court when acting as an arm of the court, The Florida Bar, the Florida Board of Bar Examiners, the Judicial Qualifications Commission, and all other entities established by or operating under the authority of the supreme court or the chief justice.
(3) "Custodian." The custodian of all administrative records of any court is the chief justice or chief judge of that court, except that each judge is the custodian of all records that are solely within the possession and control of that judge. As to all other records, the custodian is the official charged with the responsibility of maintaining the office having the care, keeping, and supervision of such records. All references to "custodian" mean the custodian or the custodian's designee.
(c) Exemptions. The following records of the judicial branch shall be confidential:
(1) Trial and appellate court memoranda, drafts of opinions and orders, court conference records, notes, and other written materials of a similar nature prepared by judges or court staff acting on behalf of *1006 or at the direction of the court as part of the court's judicial decision-making process utilized in disposing of cases and controversies before Florida courts unless filed as a part of the court record;
(2) Memoranda or advisory opinions that relate to the administration of the court and that require confidentiality to protect a compelling governmental interest, including, but not limited to, maintaining court security, facilitating a criminal investigation, or protecting public safety, which cannot be adequately protected by less restrictive measures. The degree, duration, and manner of confidentiality imposed shall be no broader than necessary to protect the compelling governmental interest involved, and a finding shall be made that no less restrictive measures are available to protect this interest. The decision that confidentiality is required with respect to such administrative memorandum or written advisory opinion shall be made by the chief judge;
(3)(A) Complaints alleging misconduct against judges until probable cause is established;
(B) Complaints alleging misconduct against other entities or individuals licensed or regulated by the courts, until a finding of probable cause or no probable cause is established, unless otherwise provided. Such finding should be made within the time limit set by law or rule. If no time limit is set, the finding should be made within a reasonable period of time;
(4) Periodic evaluations implemented solely to assist judges in improving their performance, all information gathered to form the bases for the evaluations, and the results generated therefrom;
(5) Only the names and qualifications of persons applying to serve or serving as unpaid volunteers to assist the court, at the court's request and direction, shall be accessible to the public. All other information contained in the applications by and evaluations of persons applying to serve or serving as unpaid volunteers shall be confidential unless made public by court order based upon a showing of materiality in a pending court proceeding or upon a showing of good cause;
(6) Copies of arrest and search warrants and supporting affidavits retained by judges, clerks, or other court personnel until execution of said warrants or until a determination is made by law enforcement authorities that execution cannot be made;
(7) All records made confidential under the Florida and United States Constitutions and Florida and federal law;
(8) All records presently deemed to be confidential by court rule, including the Rules for Admission to the Bar, by Florida Statutes, by prior case law of the State of Florida, and by the rules of the Judicial Qualifications Commission;
(9) Any court record determined to be confidential in case decision or court rule on the grounds that
(A) confidentiality is required to
(i) prevent a serious and imminent threat to the fair, impartial, and orderly administration of justice;
(ii) protect trade secrets;
(iii) protect a compelling governmental interest;
(iv) obtain evidence to determine legal issues in a case;
(v) avoid substantial injury to innocent third parties;
(vi) avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed;
*1007 (vii) comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law;
(B) the degree, duration, and manner of confidentiality ordered by the court shall be no broader than necessary to protect the interests set forth in subdivision (A);
(C) no less restrictive measures are available to protect the interests set forth in subdivision (A); and
(D) except as provided by law or rule of court, reasonable notice shall be given to the public of any order closing any court record.
(10) The names and any identifying information of judges mentioned in an advisory opinion of the Committee on Standards of Conduct for Judges.
(d) Judicial Review of Denial of Access Request. Expedited review of denials of access to records of the judicial branch shall be provided through an action for mandamus, or other appropriate appellate remedy, in the following manner:
(1) Where a judge who has denied a request for access to records is the custodian, the action shall be filed in the court having appellate jurisdiction to review the decisions of the judge denying access. Upon order issued by the appellate court, the judge denying access to records shall file a sealed copy of the requested records with the appellate court.
(2) All other actions under this rule shall be filed in the circuit court of the circuit in which such denial of access occurs.
(e) Procedure. Requests and responses to requests for access to records under this rule shall be made in a reasonable manner.
(1) Requests for access to records shall be in writing and shall be directed to the custodian. The request shall provide sufficient specificity to enable the custodian to identify the requested records. The reason for the request is not required to be disclosed.
(2) The custodian shall be solely responsible for providing access to records of the custodian's entity. The custodian shall determine whether the requested record is subject to this rule and, if so, whether the record or portions of the record are exempt from disclosure. The custodian shall determine the form in which the record is provided. If the request is denied, the custodian shall state in writing the basis for the denial.
(3) Fees for copies of records in all entities in the judicial branch of government, except for copies of court records, shall be the same as those provided in section 119.07, Florida Statutes (2001).

Committee Note
1995 Amendment. This rule was adopted to conform to the 1992 addition of article I, section 24, to the Florida Constitution. Amendments to this rule were adopted in response to the 1994 recommendations of the Study Committee on Confidentiality of Records of the Judicial Branch.
Subdivision (b) has been added by amendment and provides a definition of "judicial records" that is consistent with the definition of "court records" contained in rule 2.075(a)(1) and the definition of "public records" contained in chapter 119, Florida Statutes. The word "exhibits" used in this definition of judicial records is intended to refer only to documentary evidence and does not refer to tangible items of evidence such as firearms, narcotics, etc. Judicial records within this definition include all judicial records and data regardless *1008 of the form in which they are kept. Reformatting of information may be necessary to protect copyrighted material. Seigle v. Barry, 422 So.2d 63 (Fla. 4th DCA 1982), review denied, 431 So.2d 988 (Fla. 1983).
The definition of "judicial records" also includes official business information transmitted via an electronic mail (e-mail) system. The judicial branch is presently experimenting with this new technology. For example, e-mail is currently being used by the judicial branch to transmit between judges and staff multiple matters in the courts including direct communications between judges and staff and other judges, proposed drafts of opinions and orders, memoranda concerning pending cases, proposed jury instructions, and even votes on proposed opinions. All of this type of information is exempt from public disclosure under rules 2.051(c)(1) and (c)(2). With few exceptions, these examples of e-mail transmissions are sent and received between judicial officials and employees within a particular court's jurisdiction. This type of e-mail is by its very nature almost always exempt from public record disclosure pursuant to rule 2.051(c). In addition, official business e-mail transmissions sent to or received by judicial officials or employees using dial-in equipment, as well as the use of on-line outside research facilities such as Westlaw, would also be exempt e-mail under rule 2.051(c). On the other hand, we recognize that not all e-mail sent and received within a particular court's jurisdiction will fall into an exception under rule 2.051(c). The fact that a non-exempt e-mail message made or received in connection with official court business is transmitted intra-court does not relieve judicial officials or employees from the obligation of properly having a record made of such messages so they will be available to the public similar to any other written communications. It appears that official business e-mail that is sent or received by persons outside a particular court's jurisdiction is largely non-exempt and is subject to recording in some form as a public record. Each court should develop a means to properly make a record of non-exempt official business e-mail by either electronically storing the mail or by making a hard copy. It is important to note that, although official business communicated by e-mail transmissions is a matter of public record under the rule, the exemptions provided in rule 2.051(c) exempt many of these judge/staff transmissions from the public record. E-mail may also include transmissions that are clearly not official business and are, consequently, not required to be recorded as a public record. Each court should also publish an e-mail address for public access. The individual e-mail addresses of judicial officials and staff are exempt under rule 2.051(c)(2) to protect the compelling interests of maintaining the uninterrupted use of the computer for research, word-processing, preparation of opinions, and communication during trials, and to ensure computer security.
Subdivision (c)(3) was amended by creating subparts (a) and (b) to distinguish between the provisions governing the confidentiality of complaints against judges and complaints against other individuals or entities licensed or regulated by the Supreme Court.
Subdivision (c)(5) was amended to make public the qualifications of persons applying to serve or serving the court as unpaid volunteers such as guardians ad litem, mediators, and arbitrators and to make public the applications and evaluations of such persons upon a showing of materiality in a pending court proceeding or upon a showing of good cause.
*1009 Subdivision (c)(9) has also been amended. Subdivision (c)(9) was adopted to incorporate the holdings of judicial decisions establishing that confidentiality may be required to protect the rights of defendants, litigants, or third parties; to further the administration of justice; or to otherwise promote a compelling governmental interest. Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988); Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla.1982). Such confidentiality may be implemented by court rule, as well as by judicial decision, where necessary for the effective administration of justice. See, e.g., Fla.R.Crim.P. 3.470, (Sealed Verdict); Fla.R.Crim.P. 3.712, (Presentence Investigation Reports); Fla.R.Civ.P. 1.280(c), (Protective Orders).
Subdivision (c)(9)(D) requires that, except where otherwise provided by law or rule of court, reasonable notice shall be given to the public of any order closing a court record. This subdivision is not applicable to court proceedings. Unlike the closure of court proceedings, which has been held to require notice and hearing prior to closure, see Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), the closure of court records has not required prior notice. Requiring prior notice of closure of a court record may be impractical and burdensome in emergency circumstances or when closure of a court record requiring confidentiality is requested during a judicial proceeding. Providing reasonable notice to the public of the entry of a closure order and an opportunity to be heard on the closure issue adequately protects the competing interests of confidentiality and public access to judicial records. See Florida Freedom Newspapers, Inc. v. Sirmons, 508 So.2d 462 (Fla. 1st DCA 1987), approved, Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988); State ex rel. Tallahassee Democrat v. Cooksey, 371 So.2d 207 (Fla. 1st DCA 1979). Subdivision (c)(9)(D), however, does not preclude the giving of prior notice of closure of a court record, and the court may elect to give prior notice in appropriate cases.

2002 Court Commentary
The custodian is required to provide access to or copies of records but is not required either to provide information from records or to create new records in response to a request. Op. Atty. Gen. Fla. 80-57 (1980); Wootton v. Cook, 590 So.2d 1039 (Fla. 1st DCA 1991); Seigle v. Barry, 422 So.2d 63 (Fla. 4th DCA 1982).
The writing requirement is not intended to disadvantage any person who may have difficulty writing a request; if any difficulty exists, the custodian should aid the requestor in reducing the request to writing.
It is anticipated that each judicial branch entity will have policies and procedures for responding to public records requests.
The 1995 commentary notes that the definition of "judicial records" added at that time is consistent with the definition of "court records" contained in rule 2.075(a)(1) and the definition of "public records" contained in chapter 119, Florida Statutes. Despite the commentary, these definitions are not the same. The definitions added in 2002 are intended to clarify that records of the judicial branch include court records as defined in rule 2.075(a)(1) and administrative records. The definition of records of the judicial branch is consistent with the definition of "public records" in chapter 119, Florida Statutes.

2005 Court Commentary
Under courts' inherent authority, appellate courts may appoint a special magistrate to serve as commissioner for the court to make findings of fact and oversee *1010 discovery in review proceedings under subdivision (d) of this rule. Cf. State ex rel. Davis v. City of Avon Park, 117 Fla. 565, 158 So. 159 (1934) (recognizing appellate courts' inherent authority to do all things reasonably necessary for administration of justice within the scope of courts' jurisdiction, including the appointment of a commissioner to make findings of fact); Wessells v. State, 737 So.2d 1103 (Fla. 1st DCA 1998) (relinquishing jurisdiction to circuit court for appointment of a special master to serve as commissioner for court to make findings of fact).
RULE 2.430. RETENTION OF COURT RECORDS
(a) Definitions. The following definitions apply to this rule:
(1) "Court records" mean the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, video tapes, or stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes or stenographic tapes of court proceedings.
(2) "After a judgment has become final" means:
(A) when a final order, final judgment, final docket entry, final dismissal, or nolle prosequi has been entered as to all parties, no appeal has been taken, and the time for appeal has expired; or
(B) when a final order, final judgment, or final docket entry has been entered, an appeal has been taken, the appeal has been disposed of, and the time for any further appellate proceedings has expired.
(3) "Permanently recorded" means that a document has been microfilmed, optically imaged, or recorded onto an electronic record keeping system in accordance with standards adopted by the Division of Library and Information Services of the Department of State.
(b) Required Consent. Disposal of court records under this rule is subject to obtaining any consent required by law from the Division of Library and Information Services of the Department of State.
(c) Permanently Recorded Records. Court records, except exhibits, that have been permanently recorded in accordance with standards adopted by the Division of Library and Information Services of the Department of State, may be destroyed or otherwise disposed of by the clerk at any time after a judgment has become final.
(d) Records Not Permanently Recorded. No court records under this subdivision shall be destroyed or disposed of until the final order, final docket entry, or final judgment is permanently recorded for, or recorded in, the public records. The time periods shall not apply to any action in which the court orders the court records to be kept until the court orders otherwise. When an order is entered to that effect, the progress docket and the court file shall be marked by the clerk with a legend showing that the court records are not to be destroyed or disposed of without a further order of court. Any person may apply for an order suspending or prohibiting destruction or disposition of court records in any proceeding. Court records, except exhibits, that are not permanently recorded may be destroyed or disposed of by the clerk after a judgment has become final in accordance with the following schedule:
(1) For trial courts
(A) 60 daysParking tickets and noncriminal traffic infractions after required audits have been completed.
*1011 (B) 2 yearsProceedings under the Small Claims Rules, Medical Mediation Proceedings.
(C) 5 yearsMisdemeanor actions, criminal traffic violations, ordinance violations, civil litigation proceedings in county court other than those under the Small Claims Rules, and civil proceedings in circuit court except marriage dissolutions and adoptions.
(D) 10yearsProbate, guardianship, and mental health proceedings.
(E) 10 yearsFelony cases in which no information or indictment was filed or in which all charges were dismissed, or in which the state announced a nolle prosequi, or in which the defendant was adjudicated not guilty.
(F) 75 yearsJuvenile proceedings containing an order permanently depriving a parent of custody of a child, and adoptions, and all felony cases not previously destroyed.
(G) Juvenile proceedings not otherwise provided for in this subdivision shall be kept for 5 years after the last entry or until the child reaches the age of majority, whichever is later.
(H) Marriage dissolutions10 years from the last record activity. The court may authorize destruction of court records not involving alimony, support, or custody of children 5 years from the last record activity.
(2) For district courts of appeal
(A) 2 yearsnoncriminal court records.
(B) 5 yearsCriminal court records.
(3) For the Supreme Court
(A) 5 yearsAll cases disposed of by order not otherwise provided for in this rule.
(B) 10 yearsCases disposed of by order involving individuals licensed or regulated by the court and noncriminal court records involving the unauthorized practice of law.
(e) Records to Be Retained Permanently. The following court records shall be permanently recorded or permanently retained:
(1) progress dockets, and other similar records generated to document activity in a case, and
(2) court records of the supreme court in which the case was disposed of by opinion.
(f) Court Reporters' Notes. Court reporters or persons acting as court reporters for judicial or discovery proceedings shall retain the original notes or electronic records of the proceedings or depositions until the times specified below:
(1) 2 years from the date of preparing the transcriptJudicial proceedings, arbitration hearings, and discovery proceedings when an original transcript has been prepared.
(2) 10 yearsJudicial proceedings in felony cases when a transcript has not been prepared.
(3) 5 yearsAll other judicial proceedings, arbitration hearings, and discovery proceedings when a transcript has not been prepared.
When an agreement has been made between the reporter and any other person and the person has paid the reasonable charges for storage and retention of the notes, the notes or records shall be kept for any longer time agreed on. All reporters' notes shall be retained in a secure place in Florida.
(g) Exhibits.
(1) Exhibits in criminal proceedings shall be disposed of as provided by law.
*1012 (2) All other exhibits shall be retained by the clerk until 90 days after a judgment has become final. If an exhibit is not withdrawn pursuant to subdivision (i) within 90 days, the clerk may destroy or dispose of the exhibits after giving the parties or their attorneys of record 30 days' notice of the clerk's intention to do so. Exhibits shall be delivered to any party or attorney of record calling for them during the 30-day time period.
(h) Disposition Other Than Destruction. Before destruction or disposition of court records under this rule, any person may apply to the court for an order requiring the clerk to deliver to the applicant the court records that are to be destroyed or disposed of. All parties and the Division of Library and Information Services of the Department of State shall be given notice of the application by the applicant. The court shall dispose of that court record as appropriate.
(i) Release of Court Records. This rule does not limit the power of the court to release exhibits or other parts of court records that are the property of the person or party initially placing the items in the court records. The court may require copies to be substituted as a condition to releasing the court records under this subdivision.
(j) Right to Expunge Records. Nothing in this rule shall affect the power of the court to order records expunged.
(k) Sealed Records. No record which has been sealed from public examination by order of court shall be destroyed without hearing after such notice as the court shall require.
RULE 2.440. RETENTION OF JUDICIAL BRANCH ADMINISTRATIVE RECORDS
(a) Definitions.
(1) "Judicial branch" means the judicial branch of government, which includes the state courts system, the clerk of court when acting as an arm of the court, The Florida Bar, the Florida Board of Bar Examiners, the Judicial Qualifications Commission, and all other entities established by or operating under the authority of the supreme court or the chief justice.
(2) "Records of the judicial branch" means all records, regardless of physical form, characteristics, or means of transmission, made or received in connection with the transaction of official business by any judicial branch entity and consists of:
(A) "court records," which means the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, videotapes, or stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes, or stenographic tapes of court proceedings; and
(B) "administrative records," which means all other records made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business by any judicial branch entity.
(b) Retention Requirements. Administrative records in the judicial branch shall be retained in accordance with the Judicial Branch Records Retention Schedule approved by the supreme court.

2002 Commentary
This rule does not apply to court records and files that are governed by rule 2.075. This rule applies to administrative records.
To provide a consistent schedule for retention of administrative records in the judicial branch, the Supreme Court Workgroup on Public Records recommended *1013 that the Court adopt the Judicial Branch Records Retention Schedule. This schedule uses the legislatively authorized Department of State retention schedules, as appropriate, and includes a schedule for other records that are unique to the judicial branch.
RULE 2.450. TECHNOLOGICAL COVERAGE OF JUDICIAL PROCEEDINGS
(a) Electronic and Still Photography Allowed. Subject at all times to the authority of the presiding judge to: (i) control the conduct of proceedings before the court; (ii) ensure decorum and prevent distractions; and (iii) ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the appellate and trial courts of this state shall be allowed in accordance with the following standards of conduct and technology promulgated by the Supreme Court of Florida.
(b) Equipment and Personnel.
(1) At least 1 portable television camera, operated by not more than 1 camera person, shall be permitted in any trial or appellate court proceeding. The number of permitted cameras shall be within the sound discretion and authority of the presiding judge.
(2) Not more than 1 still photographer, using not more than 2 still cameras, shall be permitted in any proceeding in a trial or appellate court.
(3) Not more than 1 audio system for radio broadcast purposes shall be permitted in any proceeding in a trial or appellate court. Audio pickup for all media purposes shall be accomplished from existing audio systems present in the court facility. If no technically suitable audio system exists in the court facility, microphones and related wiring essential for media purposes shall be unobtrusive and shall be located in places designated in advance of any proceeding by the chief judge of the judicial circuit or district in which the court facility is located.
(4) Any "pooling" arrangements among the media required by these limitations on equipment and personnel shall be the sole responsibility of the media without calling upon the presiding judge to mediate any dispute as to the appropriate media representative or equipment authorized to cover a particular proceeding. In the absence of advance media agreement on disputed equipment or personnel issues, the presiding judge shall exclude all contesting media personnel from a proceeding.
(c) Sound and Light Criteria.
(1) Only television photographic and audio equipment that does not produce distracting sound or light shall be used to cover judicial proceedings. No artificial lighting device of any kind shall be used in connection with the television camera.
(2) Only still camera equipment that does not produce distracting sound or light shall be used to cover judicial proceedings. No artificial lighting device of any kind shall be used in connection with a still camera.
(3) It shall be the affirmative duty of media personnel to demonstrate to the presiding judge adequately in advance of any proceeding that the equipment sought to be used meets the sound and light criteria enunciated in this rule. A failure to obtain advance judicial approval for equipment shall preclude its use in any proceeding.
(d) Location of Equipment Personnel.
(1) Television camera equipment shall be positioned in such location in the court facility as shall be designated by the chief judge of the judicial circuit or district in *1014 which such facility is situated. The area designated shall provide reasonable access to coverage. If and when areas remote from the court facility that permit reasonable access to coverage are provided, all television camera and audio equipment shall be positioned only in such area. Videotape recording equipment that is not a component part of a television camera shall be located in an area remote from the court facility.
(2) A still camera photographer shall position himself or herself in such location in the court facility as shall be designated by the chief judge of the judicial circuit or district in which such facility is situated. The area designated shall provide reasonable access to coverage. Still camera photographers shall assume a fixed position within the designated area and, once established in a shooting position, shall act so as not to call attention to themselves through further movement. Still camera photographers shall not be permitted to move about in order to obtain photographs of court proceedings.
(3) Broadcast media representatives shall not move about the court facility while proceedings are in session, and microphones or taping equipment once positioned as required by subdivision (b)(3) shall not be moved during the pendency of the proceeding.
(e) Movement During Proceedings. News media photographic or audio equipment shall not be placed in or removed from the court facility except before commencement or after adjournment of proceedings each day, or during a recess. Neither television film magazines nor still camera film or lenses shall be changed within a court facility except during a recess in the proceeding.
(f) Courtroom Light Sources. With the concurrence of the chief judge of a judicial circuit or district in which a court facility is situated, modifications and additions may be made in light sources existing in the facility, provided such modifications or additions are installed and maintained without public expense.
(g) Conferences of Counsel. To protect the attorney-client privilege and the effective right to counsel, there shall be no audio pickup or broadcast of conferences that occur in a court facility between attorneys and their clients, between co-counsel of a client, or between counsel and the presiding judge held at the bench.
(h) Impermissible Use of Media Material. None of the film, videotape, still photographs, or audio reproductions developed during or by virtue of coverage of a judicial proceeding shall be admissible as evidence in the proceeding out of which it arose, in any proceeding subsequent or collateral thereto, or upon retrial or appeal of such proceedings.
(i) Appellate Review. Review of an order excluding the electronic media from access to any proceeding, excluding coverage of a particular participant, or upon any other matters arising under these standards shall be pursuant to Florida Rule of Appellate Procedure 9.100(d).

Court Commentary
1994 Amendment. This rule was copied from Canon 3 A(7) of the Code of Judicial Conduct. Canon 3 A(7) represented a departure from former Canon 3 A(7) [ABA Canon 35]. The former canon generally proscribed electronic media and still photography coverage of judicial proceedings from within and in areas immediately adjacent to the courtroom, with three categories of exceptions(a) use for judicial administration, (b) coverage of investitive, ceremonial, and naturalization proceedings, *1015 and (c) use for instructional purposes in educational institutions. Subject to the limitations and promulgation of standards as mentioned therein, the revised canon constituted a general authorization for electronic media and still photography coverage for all purposes, including the purposes expressed as exceptions in the former canon. Limited only by the authority of the presiding judge in the exercise of sound discretion to prohibit filming or photographing of particular participants, consent of participants to coverage is not required. The text of the rule refers to public judicial proceedings. This is in recognition of the authority reposing in the presiding judge, upon the exercise of sound discretion, to hold certain judicial proceedings or portions thereof in camera, and in recognition of the fact that certain proceedings or portions thereof are made confidential by statute. The term "presiding judge" includes the chief judge of an appellate tribunal.

PART V. PRACTICE OF LAW

A. ATTORNEYS
RULE 2.505 ATTORNEYS
(a) Scope and Purpose. All persons in good standing as members of The Florida Bar shall be permitted to practice in Florida. Attorneys of other states who are not members of The Florida Bar in good standing shall not engage in the practice of law in Florida except to the extent permitted by rule 2.510.
(b) Persons Employed by the Court. Except as provided in this subdivision, no full-time employee of the court shall practice as an attorney in any court or before any agency of government while continuing in that position. Any attorney designated by the chief justice or chief judge may represent the court, any court employee in the employee's official capacity, or any judge in the judge's official capacity, in any proceeding in which the court, employee, or judge is an interested party. An attorney formerly employed by a court shall not represent anyone in connection with a matter in which the attorney participated personally and substantially while employed by the court, unless all parties to the proceeding consent after disclosure.
(c) Attorney Not to Be Surety. No attorneys or other officers of court shall enter themselves or be taken as bail or surety in any proceeding in court.
(d) Stipulations. No private agreement or consent between parties or their attorneys concerning the practice or procedure in an action shall be of any force unless the evidence of it is in writing, subscribed by the party or the party's attorney against whom it is alleged. Parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings, and agreements made at depositions that are incorporated in the transcript need not be signed when signing of the deposition is waived. This rule shall not apply to settlements or other substantive agreements.
(e) Appearance of Attorney. An attorney may appear in a proceeding in any of the following ways:
(1) By serving and filing, on behalf of a party, the party's first pleading or paper in the proceeding.
(2) By substitution of counsel, but only by order of court and with written consent of the client, filed with the court. The court may condition substitution upon payment of, or security for, the substituted attorney's fees and expenses, or upon such other terms as may be just.
(3) By filing with the court and serving upon all parties a notice of appearance as counsel for a party that has already appeared *1016 in a proceeding pro se or as co-counsel for a party that has already appeared in a proceeding by non-withdrawing counsel.
(f) Termination of Appearance of Attorney. The appearance of an attorney for a party in a proceeding shall terminate only in one of the following ways:
(1) Withdrawal of Attorney. By order of court, where the proceeding is continuing, upon motion and hearing, on notice to all parties and the client, such motion setting forth the reasons for withdrawal and the client's last known address.
(2) Substitution of Attorney. By order of court, under the procedure set forth in subdivision (e)(2) of this rule.
(3) Termination of Proceeding. Automatically, without order of court, upon the termination of a proceeding, whether by final order of dismissal, by final adjudication, or otherwise, and following the expiration of any applicable time for appeal, where no appeal is taken.
(4) Filing of Notice of Completion. For limited representation proceedings under Florida Family Law Rule of Procedure 12.040, automatically, by the filing of a notice of completion titled "Termination of Limited Appearance" pursuant to rule 12.040(c).
(g) Law Student Participation. Eligible law students shall be permitted to participate as provided under the conditions of chapter 11 of the Rules Regulating The Florida Bar as amended from time to time.
(h) Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client.

Court Commentary
1997 Amendment. Originally, the rule provided that the follow-up filing had to occur within ten days. In the 1997 amendment to the rule, that requirement was modified to provide that the follow-up filing must occur "immediately" after a document is electronically filed. The "immediately thereafter" language is consistent with language used in the rules of procedure where, in a somewhat analogous situation, the filing of a document may occur after service. See, e.g., Florida Rule of Civil Procedure 1.080(d) ("All original papers shall be filed with the court either before service or immediately thereafter.") (emphasis added). "Immediately thereafter" has been interpreted to mean "filed with reasonable promptness." Miami Transit Co. v. Ford, 155 So.2d 360 (Fla. 1963).
The use of the words "other person" in this rule is not meant to allow a nonlawyer to sign and file pleadings or other papers on behalf of another. Such conduct would constitute the unauthorized practice of law.
2003 Amendment. Rule Regulating the Florida Bar 4-1.12(c), which addresses the imputed disqualification of a law firm, should be looked to in conjunction with the rule 2.060(b) restriction on representation by a former judicial staff attorney or law clerk.
RULE 2.510. FOREIGN ATTORNEYS
(a) Eligibility. Upon filing a verified motion with the court, an attorney who is an active member in good standing of the bar of another state and currently eligible to practice law in a state other than Florida may be permitted to appear in particular cases in a Florida court upon such conditions as the court may deem appropriate, provided that a member of The *1017 Florida Bar in good standing is associated as an attorney of record. In determining whether to permit a foreign attorney to appear pursuant to this rule, the court may consider, among other things, information provided under subdivision (b)(3) concerning discipline in other jurisdictions. No attorney is authorized to appear pursuant to this rule if the attorney (1) is a Florida resident; (2) is a member of The Florida Bar but is ineligible to practice law; (3) has previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation permitted pursuant to this rule provided, however, the contempt is final and has not been reversed or abated; (4) has failed to provide notice to The Florida Bar or pay the filing fee as required in subdivision (b)(7); or (5) is engaged in a "general practice" before Florida courts. For purposes of this rule, more than 3 appearances within a 365-day period in separate representations shall be presumed to be a "general practice." In cases involving indigent clients, the court may waive the filing fee for good cause shown.
(b) Contents of Verified Motion. A form verified motion accompanies this rule and shall be utilized by the foreign attorney. The verified motion required by subdivision (a) shall include:
(1) a statement identifying all jurisdictions in which the attorney is an active member in good standing and currently eligible to practice law;
(2) a statement identifying by date, case name, and case number all other matters in Florida state courts in which pro hac vice admission has been sought in the preceding 5 years, and whether such admission was granted or denied;
(3) a statement identifying all jurisdictions in which the attorney has been disciplined in any manner in the preceding 5 years and the sanction imposed, or in which the attorney has pending any disciplinary proceeding, including the date of the disciplinary action and the nature of the violation;
(4) a statement identifying the date on which the legal representation at issue commenced, and the party or parties represented;
(5) a statement that all applicable provisions of these rules and the Rules Regulating The Florida Bar have been read, and that the verified motion complies with those rules;
(6) the name, record bar address, and membership status of the Florida Bar member or members associated for purposes of the representation;
(7) a certificate indicating service of the verified motion upon all counsel of record in the matter in which leave to appear pro hac vice is sought and upon The Florida Bar at its Tallahassee office accompanied by a nonrefundable $250.00 filing fee made payable to The Florida Bar or notice of the waiver of the fee; and
(8) a verification by the attorney seeking to appear pursuant to this rule and the signature of the Florida Bar member or members associated for purposes of the representation.
IN THE CIRCUIT COURT OF THE
 __________ JUDICIAL CIRCUIT,
IN AND FOR ____________ COUNTY,
 FLORIDA
 Case No. ________
_________
 Plaintiff
 Division ________
VS.
_________
 Defendant
*1018 VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.510
Comes now ________________,
Movant herein, and respectfully represents
the following:
 1. Movant resides at
_____________________ (Street Address),
____________ (City), _________ (County),
____________ (State), ______ (Zip Code),
____________ (Telephone with area code),
____________ (Social Security Number) and
is not a resident of the State of Florida.
 2. Movant is an attorney and a member
of the law firm of (or practices law
under the name of) ________________,
with offices at ____________ (Street
Address), ______________ (City),
_________ (County), _______ (State),
______ (Zip Code), ____ (Telephone).
 3. Movant has been retained personally
or as a member of the above-named law
firm on ________ (Date Representation
Commenced) by ______________________
(Name of Party of Parties) to provide legal
representation in connection with the
above-styled matter now pending before
the above-named court of the State of
Florida.
 4. Movant is an active member in good
standing and currently eligible to practice
law in the following jurisdiction(s):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 5. There are no disciplinary proceedings
pending against Movant, except as
provided below (give jurisdiction of disciplinary
action, date of disciplinary action,
nature of the violation and the sanction, if
any, imposed):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 6. Within the past five (5) years, Movant
has not been subject to any disciplinary
proceedings, except as provided below
(give jurisdiction of disciplinary action,
date of disciplinary action, nature of the
violation and the sanction, if any, imposed):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 7. Movant has never been subject to
any suspension proceedings, except as provided
below (give jurisdiction of disciplinary
action, date of disciplinary action, nature
of the violation and the sanction, if
any, imposed):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 8. Movant has never been subject to
any disbarment proceedings, except as
provided below (give jurisdiction of disciplinary
action, date of disciplinary action,
*1019
nature of the violation and the sanction, if
any, imposed):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 9. Movant, either by resignation, withdrawal,
or otherwise, never has terminated
or attempted to terminate Movant's office
as an attorney in order to avoid administrative,
disciplinary, disbarment, or suspension
proceedings.
 10. Movant is not an inactive member
of The Florida Bar.
 11. Movant is not now and has never
been a member of The Florida Bar.
 12. Movant is not a suspended member
of The Florida Bar.
 13. Movant is not a disbarred member
of The Florida Bar nor has Movant received
a disciplinary resignation from The
Florida Bar.
 14. Movant has not previously been
disciplined or held in contempt by reason
of misconduct committed while engaged in
representation pursuant to Florida Rule of
Judicial Administration 2.510, except as
provided below (give date of disciplinary
action or contempt, reasons therefor, and
court imposing contempt):
(attach additional sheet if necessary)
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
 15. Movant has filed motion(s) to appear
as counsel in Florida state courts
during the past five (5) years in the following
matters:
(attach additional sheet if necessary)
Date of Case Case Motion
Motion Name Number Court Granted/Denied
____________________________________________
____________________________________________
____________________________________________
____________________________________________
____________________________________________
 16. Local counsel of record associated
with Movant in this matter is
__________________ (Name and Florida Bar
Number) who is an active member in good
standing of The Florida Bar and has offices
at ________________________ (Street Address),
_________ (City), _____________
County, Florida, __________ (Zip Code),
___________ (Telephone with area code).
(If local counsel is not an active member of
The Florida Bar in good standing, please
provide information as to local counsel's
membership status.__________________)
 17. Movant has read the applicable
provisions of Florida Rule of Judicial Administration
2.510 and Rule 1-3.10 of the
Rules Regulating The Florida Bar and certifies
that this verified motion complies
with those rules.
 18. Movant agrees to comply with the
provisions of the Florida Rules of Professional
Conduct and consents to the jurisdiction
of the courts and the Bar of the
State of Florida.
 WHEREFORE, Movant respectfully requests
permission to appear in this court
for this cause only.
 DATED this ________ day of
________, 20__.
 ________________
 Movant
STATE OF _____________
COUNTY OF ______________
*1020
 I, ___________________, do hereby swear
or affirm under penalty of perjury that I
am the Movant in the above-styled matter;
that I have read the foregoing Motion and
know the contents thereof, and the contents
are true of my own knowledge and
belief.
 __________________
 Movant/Affiant
The foregoing instrument was acknowledged
before me this ___ day of _____,
20__, by __________ who is personally
known to me or who has produced
_______ as identification and who did
take an oath.
___ day of ______, 20__.
_________________ Notary Public
Notary Public (Signature)
________________
(Printed or Typed Name)
Commission Number: __________
My commission expires: _____
I hereby consent to be associated as local counsel of record in this cause pursuant to Florida Rule of Judicial Administration 2.510.
 DATED this __________ day of
_____________, 20__.
 ___________
 Local Counsel of Record
 ___________
 Florida Bar Number
CERTIFICATE OF SERVICE
I HEREBY CERTIFY that a true and correct copy of the foregoing motion was furnished by U.S. mail to PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX accompanied by payment of the $250.00 filing fee made payable to The Florida Bar and to
________________________
________________________
 Name and Address of All Counsel of
Record and of Parties Not Represented by
Counsel this __________ day of
_______________, 20__.
 _____________
 Movant

B. PRACTICE AND LITIGATION PROCEDURES
RULE 2.515. SIGNATURE OF ATTORNEYS AND PARTIES
(a)Attorney Signature. Every pleading and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in that attorney's individual name whose address, telephone number, including area code, and Florida Bar number shall be stated, and who shall be duly licensed to practice law in Florida or who shall have received permission to appear in the particular case as provided in rule 2.510. The attorney may be required by the court to give the address of, and to vouch for the attorney's authority to represent, the party. Except when otherwise specifically provided by an applicable rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served.
(b) Pro Se Litigant Signature. A party who is not represented by an attorney shall sign any pleading or other paper and *1021 state the party's address and telephone number, including area code.
(c) Form of Signature.
(1) The signatures required on pleadings and papers by subdivisions (a) and (b) of this rule may be:
(A) original signatures;
(B) original signatures that have been reproduced by electronic means, such as on electronically transmitted documents or photocopied documents; or
(C) any other signature format authorized by general law, so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format.
(2) An attorney, party, or other person who files a pleading or paper by electronic transmission that does not contain the original signature of that attorney, party, or other person shall file that identical pleading or paper in paper form containing an original signature of that attorney, party, or other person (hereinafter called the follow-up filing) immediately thereafter. The follow-up filing is not required if the Supreme Court of Florida has entered an order directing the clerk of court to discontinue accepting the follow-up filing.
RULE 2.520. PAPER
(a) Type and Size. All pleadings, motions, petitions, briefs, notices, orders, judgments, decrees, opinions, and other papers and official documents filed in any court shall be filed on recycled paper measuring 8 1/2 by 11 inches. For purposes of this rule, paper is recycled if it contains a minimum content of 50 percent waste paper. Xerographic reduction of legal-size (8 1/2 by 14 inches) documents to letter size (8 1/2 by 11 inches) is prohibited.
(b) Exhibits. Any exhibit or attachment filed with pleadings or papers may be filed in its original size.
(c) Recording Space. On all papers and documents prepared and filed by the court or by any party to a proceeding which are to be recorded in the public records of any county, including but not limited to final money judgments and notices of lis pendens, a 3-inch by 3-inch space at the top right-hand corner on the first page and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page shall be left blank and reserved for use by the clerk of court.
(d) Exceptions to Recording Space. Any papers or documents created by persons or entities over which the filing party has no control, including but not limited to wills, codicils, trusts, or other testamentary documents; documents prepared or executed by any public officer; documents prepared, executed, acknowledged, or proved outside of the State of Florida; or documents created by State or Federal government agencies, may be filed without the space required by this rule.
(e) Noncompliance. No clerk of court shall refuse for filing any document or paper because of noncompliance with this rule. However, upon request of the clerk of court, noncomplying documents shall be resubmitted in accordance with this rule.

Court Commentary
1989 Adoption. Rule 2.055 is new. This rule aligns Florida's court system with the federal court system and the court systems of the majority of our sister states by requiring in subdivision (a) that all pleadings, motions, petitions, briefs, notices, orders, judgments, decrees, opinions, or other papers filed with any Florida court be submitted on paper measuring 8 *1022 1/2 by 11 inches. Subdivision (e) provides a 1-year transition period from the effective date of January 1, 1990, to January 1, 1991, during which time filings that traditionally have been accepted on legal-size paper will be accepted on either legal- or letter-size paper. The 1-year transition period was provided to allow for the depletion of inventories of legal-size paper and forms. The 1-year transition period was not intended to affect compliance with Florida Rule of Appellate Procedure 9.210(a)(1), which requires that typewritten appellate briefs be filed on paper measuring 8 1/2 by 11 inches. Nor was it intended that the requirement of Florida Rule of Appellate Procedure 9.210(a)(1) that printed briefs measure 6 by 9 inches be affected by the requirements of subdivision (a).
Subdivision (b), which recognizes an exception for exhibits or attachments, is intended to apply to documents such as wills and traffic citations which traditionally have not been generated on letter-size paper.
Subdivision (c) was adopted to ensure that a 1 1/2 inch square at the top right-hand corner of all filings is reserved for use by the clerk of court. Subdivision (d) was adopted to ensure that all papers and documents submitted for filing will be considered filed on the date of submission regardless of paper size. Subdivision (d) also ensures that after the 1-year transition period of subdivision (e), filings that are not in compliance with the rule are resubmitted on paper measuring 8 1/2 by 11 inches.
This rule is not intended to apply to those instruments and documents presented to the clerk of the circuit court for recording in the Official Records under section 28.222, Florida Statutes (1987). It is also not intended to apply to matters submitted to the clerk of the circuit court in the capacity as ex officio clerk of the board of county commissioners pursuant to article VIII, section (1)(d), Florida Constitution.
1996 Amendment. Subdivision (c) was amended to make the blank space requirements for use by the clerk of the court consistent with section 695.26, Florida Statutes (1995). Subdivision (e) was eliminated because the transition period for letter-size and recycled paper was no longer necessary.
RULE 2.525. ELECTRONIC FILING
(a) Definition. "Electronic transmission of documents" means the transmission by electronic signals, to or from a court or clerk of the court, of information which when received can be transformed and stored or reproduced on paper, microfilm, magnetic storage device, optical imaging system, or other electronic record keeping system authorized by the Supreme Court of Florida in a format sufficient to communicate the information on the original document in a readable format.
(b) Application. Any court or clerk of the court may accept the electronic transmission of documents for filing after the clerk, together with input from the chief judge of the circuit, has obtained approval of the procedures and program for doing so from the Supreme Court of Florida.
(c) Documents Affected.
(1) All documents that are court records, as defined in rule 2.430(a)(1), may be filed by electronic transmission provided that:
(A) the clerk of court has the ability to accept and retain such documents;
(B) the clerk of court or the chief judge of the circuit has requested permission to accept documents filed by electronic transmission; and
*1023 (C) the Supreme Court of Florida has entered an order granting permission to the clerk of court to accept documents filed by electronic transmission.
Any attorney, party, or other person who files a document by electronic transmission shall, immediately thereafter, file the identical document, in paper form, with an original signature of the attorney, party, or other person if a signature is otherwise required by these rules (hereinafter called the follow-up filing).
(2) The follow-up filing of any document that has previously been filed by electronic transmission may be discontinued if:
(A) after a 90-day period of accepting electronically filed documents, the clerk of court or the chief judge of the circuit certifies to the Supreme Court of Florida that the electronic filing system is efficient, reliable, and meets the demands of all parties;
(B) the clerk of court or the chief judge of the circuit requests permission to discontinue that portion of the rule requiring a follow-up filing of documents in paper form, except as otherwise required by general law, statute, or court rule; and
(C) the Supreme Court of Florida enters an order directing the clerk of court to discontinue accepting the follow-up filing.
(d) Service.
(1) Electronic transmission may be used by a court for the service of all orders of whatever nature provided the clerk, together with input from the chief judge of the circuit, has obtained approval from the Supreme Court of Florida of the specific procedures and program to be used in transmitting the orders. All other requirements for the service of such an order shall be met.
(2) Any document electronically transmitted to a court or clerk of the court shall also be served on all parties and interested persons in accordance with the applicable rules of court.
(e) Transmission Difficulties. Any attorney, party, or other person who elects to file any document by electronic transmission shall be responsible for any delay, disruption, interruption of the electronic signals, and readability of the document, and accepts the full risk that the document may not be properly filed with the clerk as a result.
(f) Administration.
(1) Any clerk of the court who, after obtaining Supreme Court of Florida approval, accepts for filing documents that have been electronically transmitted shall:
(A) provide electronic or telephonic access to its equipment during regular business hours; and
(B) accept electronic transmission of documents up to 10 pages in length.
(2) All attorneys, parties, or other persons using this rule to file documents are required to make arrangements with the court or clerk of the court for the payment of any charges authorized by general law or the Supreme Court of Florida before filing any document by electronic transmission.
(3) The filing date for an electronically transmitted document shall be the date the last page thereof is received by the court or clerk of the court.
(4) Any court or clerk of the court may extend the hours of access or increase the page limitations set forth in this subdivision.

*1024 Court Commentary
1997 Amendment. Originally, the rule provided that the follow-up filing had to occur within ten days. In the 1997 amendment to the rule, that requirement was modified to provide that the follow-up filing must occur "immediately" after a document is electronically filed. The "immediately thereafter" language is consistent with language used in the rules of procedure where, in a somewhat analogous situation, the filing of a document may occur after service. See, e.g., Florida Rule of Civil Procedure 1.080(d) ("All original papers shall be filed with the court either before service or immediately thereafter.") (emphasis added). "Immediately thereafter" has been interpreted to mean "filed with reasonable promptness." Miami Transit Co. v. Ford, 155 So.2d 360 (Fla. 1963).
The use of the words "other person" in this rule is not meant to allow a nonlawyer to sign and file pleadings or other papers on behalf of another. Such conduct would constitute the unauthorized practice of law.
RULE 2.530. COMMUNICATION EQUIPMENT
(a) Definition. Communication equipment means a conference telephone or other electronic device that permits all those appearing or participating to hear and speak to each other, provided that all conversation of all parties is audible to all persons present.
(b) Use by All Parties. A county or circuit court judge may, upon the court's own motion or upon the written request of a party, direct that communication equipment be used for a motion hearing, pretrial conference, or a status conference. A judge must give notice to the parties and consider any objections they may have to the use of communication equipment before directing that communication equipment be used. The decision to use communication equipment over the objection of parties will be in the sound discretion of the trial court, except as noted below.
(c) Use Only by Requesting Party. A county or circuit court judge may, upon the written request of a party upon reasonable notice to all other parties, permit a requesting party to participate through communication equipment in a scheduled motion hearing; however, any such request (except in criminal, juvenile, and appellate proceedings) must be granted, absent a showing of good cause to deny the same, where the hearing is set for not longer than 15 minutes.
(d) Testimony.
(1) Generally. A county or circuit court judge may, if all the parties consent, allow testimony to be taken through communication equipment.
(2) Procedure. Any party desiring to present testimony through communication equipment shall, prior to the hearing or trial at which the testimony is to be presented, contact all parties to determine whether each party consents to this form of testimony. The party seeking to present the testimony shall move for permission to present testimony through communication equipment, which motion shall set forth good cause as to why the testimony should be allowed in this form.
(3) Oath. Testimony may be taken through communication equipment only if a notary public or other person authorized to administer oaths in the witness's jurisdiction is present with the witness and administers the oath consistent with the laws of the jurisdiction.
(4) Confrontation Rights. In juvenile and criminal proceedings the defendant must make an informed waiver of any confrontation rights that may be abridged by the use of communication equipment.
*1025 (5) Video Testimony. If the testimony to be presented utilizes video conferencing or comparable two-way visual capabilities, the court in its discretion may modify the procedures set forth in this rule to accommodate the technology utilized.
(e) Burden of Expense. The cost for the use of the communication equipment is the responsibility of the requesting party unless otherwise directed by the court.
(f) Override of Family Violence Indicator. Communications equipment may be used for a hearing on a petition to override a family violence indicator under Florida Family Law Rule of Procedure 12.650.
RULE 2.535. COURT REPORTING
(a) Definition. "Court reporting" means the act of making a verbatim record of the spoken word, whether by the use of written symbols, stenomask equipment, or electronic devices, in any proceedings pending in any of the courts of this state, including all discovery proceedings conducted in connection therewith, and all proceedings required by statute to be reported by a certified or official court reporter. It does not mean either the act of taking witness statements not intended for use in court as substantive evidence, or the act of electronic recording and transcription of proceedings as provided for in subdivision (g)(3).
(b) When Court Reporting Required. Any proceeding shall be reported on the request of any party. The party so requesting shall pay the reporting fees, but this requirement shall not preclude the taxation of costs as authorized by law.
(c) Record. When trial proceedings are being reported, no part of the proceedings shall be omitted unless all of the parties agree to do so and the court approves the agreement. When a deposition is being reported, no part of the proceedings shall be omitted unless all of the parties and the witness so agree. When a party or a witness seeks to terminate or suspend the taking of a deposition for the time necessary to seek a court order, the court reporter shall discontinue reporting the testimony of the witness.
(d) Fees. The chief judge shall have the discretion to adopt an administrative order establishing maximum fees for court reporting services not covered in the plan adopted pursuant to subdivision (g). Any such order must make a specific factual finding that the setting of such maximum fees is necessary to ensure access to the courts. Such finding shall include consideration of the number of court reporters in the county or circuit, any past history of fee schedules, and any other relevant factors.
(e) Transcripts. Transcripts of all judicial proceedings, including depositions, shall be uniform in and for all courts throughout the state. The form, size, spacing, and method of printing transcripts are as follows:
(1) All proceedings shall be printed on paper 8 1/2 inches by 11 inches in size and bound on the left.
(2) There shall be no fewer than 25 printed lines per page with all lines numbered 1 through 25, respectively, and with no more than a double space between lines.
(3) Font size or print shall be 9 or 10 pica, 12-point courier, or 12-point Times New Roman print with no less than 56 characters per line on questions and answers unless the text of the speaker ends short of marginal requirements.
(4) Colloquy material shall begin on the same line following the identification of the speaker, with no more than 2 spaces between the identification of the speaker and the commencement of the colloquy. *1026 The identification of the speaker in colloquy shall begin no more than 10 spaces from the left margin, and carry-over colloquy shall be indented no more than 5 spaces from the left margin.
(5) Each question and answer shall begin on a separate line no more than 5 spaces from the left margin with no more than 5 spaces from the "Q" or "A" to the text. Carry-over question and answer lines shall be brought to the left margin.
(6) Quoted material shall begin no more than 10 spaces from the left margin with carry-over lines beginning no more than 10 spaces from the left margin.
(7) Indentations of no more than 10 spaces may be used for paragraphs, and all spaces on a line as herein provided shall be used unless the text of the speaker ends short of marginal requirements.
(8) One-line parentheticals may begin at any indentation. Parentheticals exceeding 1 line shall begin no more than 10 spaces from the left margin, with carryover lines being returned to the left margin.
(9) Individual volumes of a transcript, including depositions, shall be no more than 200 pages in length, inclusive of the index.
(10) Deviation from these standards shall not constitute grounds for limiting use of transcripts in the trial or appellate courts.
(f) Reporter as Officer of Court. A court reporter is an officer of the court for all purposes while acting as a reporter in a judicial proceeding or discovery proceeding. The court reporter shall comply with all rules and statutes governing the proceeding that are applicable to court reporters.
(g) Court Reporting Services Provided in Mental Health Proceedings or at Public Expense.
(1) When Reporting Required. All criminal and juvenile proceedings, and any other judicial proceedings required by law or court rule to be reported at public expense, shall be reported.
(2) Circuit Plan. The chief judge, after consultation with the circuit court and county court judges in the circuit, shall enter an administrative order developing and implementing a circuit-wide plan for the court reporting of all proceedings required to be reported at public expense using either full or part time court employees or independent contractors. The plan shall ensure that all court reporting services are provided by qualified persons. This plan may provide for multiple service delivery strategies if they are necessary to ensure the efficient provision of court reporting services. Each circuit's plan for court reporting services shall be developed after consideration of guidelines issued by the Office of the State Courts Administrator.
(3) Electronic Recording and Transcription of Proceedings Without Court Reporters. A chief judge may enter a circuit-wide administrative order, which shall be recorded, authorizing the electronic recording and subsequent transcription by persons other than court reporters, of any judicial proceedings, including depositions, that are otherwise required to be reported by a court reporter. Appropriate procedures shall be prescribed in the order which shall:
(A) set forth responsibilities for the court's support personnel to ensure a reliable record of the proceedings;
(B) provide a means to have the recording transcribed, either in whole or in part, when necessary for an appeal or for further use in the trial court; and
(C) provide for the safekeeping of such recordings.
*1027 The presiding judge in a specific case, however, may require a court reporter, if available, or either party may provide and pay for the cost of a court reporter. Such court reporter shall be subject to the orders of the court and directions to transcribe the record from all parties.
(4) Grand Jury Proceedings. Testimony in grand jury proceedings shall be reported by a court reporter, but shall not be transcribed unless required by order of court. Other parts of grand jury proceedings, including deliberations and voting, shall not be reported. The court reporter's work product, including stenographic notes, electronic recordings, and transcripts, shall be filed with the clerk of the court under seal.
(h) Court Reporting Services in Capital Cases. On or before January 1, 2001, the chief judge, after consultation with the circuit court judges in the circuit, shall enter an administrative order developing and implementing a circuit-wide plan for court reporting in all trials in which the state seeks the death penalty and in capital postconviction proceedings. The plan shall require the use of all measures necessary to expedite the preparation of the transcript, including but not limited to:
(1) where available, the use of a court reporter who has the capacity to provide real-time transcription of the proceedings;
(2) if real-time transcription services are not available, the use of a computer-aided transcription qualified court reporter;
(3) the use of scopists, text editors, alternating court reporters, or other means to expedite the finalization of the certified transcript; and
(4) the imposition of reasonable restrictions on work assignments by employee or contract court reporters to ensure that transcript production in capital cases is given a priority.
RULE 2.540. NOTICES TO PERSONS WITH DISABILITIES
All notices of court proceedings to be held in a public facility, and all process compelling appearance at such proceedings, shall include the following:
"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact [identify applicable court personnel by name, address, and telephone number] within 2 working days of your receipt of this [describe notice]; if you are hearing or voice impaired, call 711."
RULE 2.545. CASE MANAGEMENT
(a) Purpose. Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case.
(b) Case Control. The trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case thereafter until the case is determined. The trial judge shall take specific steps to monitor and control the pace of litigation, including the following:
(1) assuming early and continuous control of the court calendar;
(2) identifying priority cases as assigned by statute, rule of procedure, case law, or otherwise;
(3) implementing such docket control policies as may be necessary to advance priority cases to ensure prompt resolution;
(4) identifying cases subject to alternative dispute resolution processes;
*1028 (5) developing rational and effective trial setting policies; and
(6) advancing the trial setting of priority cases, older cases, and cases of greater urgency.
(c) Priority Cases.
(1) In all noncriminal cases assigned a priority status by statute, rule of procedure, case law, or otherwise, any party may file a notice of priority status explaining the nature of the case, the source of the priority status, any deadlines imposed by law on any aspect of the case, and any unusual factors that may bear on meeting the imposed deadlines.
(2) If, in any noncriminal case assigned a priority status by statute, rule of procedure, case law, or otherwise, a party is of the good faith opinion that the case has not been appropriately advanced on the docket or has not received priority in scheduling consistent with its priority case status, that party may seek review of such action by motion for review to the chief judge or to the chief judge's designee. The filing of such a motion for review will not toll the time for seeking such other relief as may be afforded by the Florida Rules of Appellate Procedure.
(d) Related Cases.
(1) The petitioner in a family case shall file with the court a notice of related cases, if related cases are known or reasonably ascertainable. A case is related when:
(A) it involves any of the same parties, children, or issues and it is pending at the time the party files a family case; or
(B) it affects the court's jurisdiction to proceed; or
(C) an order in the related case may conflict with an order on the same issues in the new case; or
(D) an order in the new case may conflict with an order in the earlier litigation.
(2) "Family cases" include dissolution of marriage, annulment, support unconnected with dissolution of marriage, paternity, child support, UIFSA, custodial care of and access to children, adoption, name change, declaratory judgment actions related to premarital, marital, or postmarital agreements, civil domestic, repeat violence, dating violence, and sexual violence injunctions, juvenile dependency, termination of parental rights, juvenile delinquency, emancipation of a minor, CINS/FINS, truancy, and modification and enforcement of orders entered in these cases.
(3) The notice of related cases shall identify the caption and case number of the related case, contain a brief statement of the relationship of the actions, and contain a statement addressing whether assignment to one judge or another method of coordination will conserve judicial resources and promote an efficient determination of the actions.
(4) The notice of related cases shall be filed with the initial pleading by the filing attorney or self-represented petitioner.
(5) Each party has a continuing duty to inform the court of any proceedings in this or any other state that could affect the current proceeding.
(6) Whenever it appears to a party that two or more pending cases present common issues of fact and that assignment to one judge or another method of coordination will significantly promote the efficient administration of justice, conserve judicial resources, avoid inconsistent results, or prevent multiple court appearances by the same parties on the same issues, the party may file a notice of related cases requesting coordination of the litigation.
*1029 (7) The notice of related cases shall be served on all parties in the related cases, the presiding judges, and the chief judge or family law administrative judge.
(e) Continuances. All judges shall apply a firm continuance policy. Continuances should be few, good cause should be required, and all requests should be heard and resolved by a judge. All motions for continuance shall be in writing unless made at a trial and, except for good cause shown, shall be signed by the party requesting the continuance. All motions for continuance in priority cases shall clearly identify such priority status and explain what effect the motion will have on the progress of the case.
RULE 2.550. CALENDAR CONFLICTS
(a) Guidelines. In resolving calendar conflicts between the state courts of Florida or between a state court and a federal court in Florida, the following guidelines must be considered:
(1) Any case priority status established by statute, rule of procedure, case law, or otherwise shall be evaluated to determine the effect that resolving a calendar conflict might have on the priority case or cases.
(2) Juvenile dependency and termination of parental rights cases are generally to be given preference over other cases, except for speedy trial and capital cases.
(3) Criminal cases are generally to be given preference over civil cases.
(4) Jury trials are generally to be given preference over non-jury trials.
(5) Appellate arguments, hearings, and conferences are generally to be given preference over trial court proceedings.
(6) The case in which the trial date has been first set generally should take precedence.
(b) Additional Circumstances. Factors such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case, and other relevant matters may warrant deviation from these case guidelines.
(c) Notice and Agreement; Resolution by Judges. When an attorney is scheduled to appear in 2 courts at the same time and cannot arrange for other counsel to represent the clients' interests, the attorney shall give prompt written notice of the conflict to opposing counsel, the clerk of each court, and the presiding judge of each case, if known. If the presiding judge of the case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to the chief judge's designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case guidelines.

Committee Notes
1996 Adoption. The adoption of this rule was prompted by the Resolution of the Florida State-Federal Judicial Council Regarding Calendar Conflicts Between State and Federal Courts, which states as follows:
WHEREAS, the great volume of cases filed in the state and federal courts of Florida creates calendar conflicts between the state and federal courts of Florida which should be resolved in a fair, efficient and orderly manner to allow for judicial efficiency and economy; and
WHEREAS, the Florida State-Federal Judicial Council which represents the Bench and Bar of the State of Florida believes that it would be beneficial to formally agree upon and publish recommended *1030 procedures and priorities for resolving calendar conflicts between the state and federal courts of Florida;
NOW, THEREFORE, BE IT RESOLVED
In resolving calendar conflicts between the state and federal courts of Florida, the following case priorities should be considered:
1. Criminal cases should prevail over civil cases.
2. Jury trials should prevail over non-jury trials.
3. Appellate arguments, hearings, and conferences should prevail over trials.
4. The case in which the trial date has been first set should take precedence.
5. Circumstances such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case and other relevant matters may warrant deviation from this policy. Such matters are encouraged to be resolved through communication between the courts involved.
Where an attorney is scheduled to appear in two courtstrial or appellate, state or federalat the same time and cannot arrange for other counsel in his or her firm or in the case to represent his or her client's interest, the attorney shall give prompt written notice to opposing counsel, the clerk of each court, and the presiding judge of each case, if known, of the conflict. If the presiding judge of a case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to his or her designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case priorities.
In jurisdictions where calendar conflicts arise with frequency, it is recommended that each court involved consider appointing a calendar conflict coordinator to assist the judges in resolving calendar conflicts by obtaining information regarding the conflicts and performing such other ministerial duties as directed by the judges.
REVISED AND READOPTED at Miami, Florida, this 13th day of January, 1995.

Court Commentary
2002 Court Commentary. As provided in subdivision (c), when a scheduling conflict involves different courts, the presiding judges should confer and undertake to agree on a resolution, using the guidelines provided in this rule.
RULE 2.555. INITIATION OF CRIMINAL PROCEEDINGS
(a) Major Statutory Offense. Law enforcement officers, at the time of the filing of a complaint with the clerk of court, shall designate whether the most serious charge on the complaint is a felony or a misdemeanor. The state attorney or the state attorney's designee, at the time of the filing of an original information or an original indictment with the clerk of court, shall designate whether the most serious offense on the information or the indictment is a felony or misdemeanor. Complaints, original informations, and original indictments on which the most serious charge is a felony shall be filed with the clerk of the circuit court.
(b) Ordinance Violations. In cases when the state attorney has the responsibility for the prosecution of county or municipal ordinance violations, where such ordinances have state statutory equivalents, the state attorney or the state attorney's designee shall set forth at the top of the face of the accusatory instrument the exact statute number of the single most serious offense charged.
*1031 (c) Information or Indictment after County Court Proceedings Begun. When action in a criminal case has been initiated in county court, and subsequently the state attorney files a direct information or the grand jury indicts the defendant, the state attorney or the state attorney's designee shall notify the clerk without delay.
RULE 2.560. APPOINTMENT OF INTERPRETERS FOR NON-ENGLISH-SPEAKING PERSONS
(a) Criminal or Juvenile Delinquency Proceedings. In any criminal or juvenile delinquency proceeding in which a non-English-speaking person is the accused, an interpreter for the non-English-speaking person shall be appointed. In any criminal or juvenile delinquency proceeding in which a non-English-speaking person is a victim, an interpreter shall be appointed unless the court finds that the victim does not require the services of a court-appointed interpreter.
(b) Other Proceedings. In all other proceedings in which a non-English-speaking person is a litigant, an interpreter for the non-English-speaking litigant shall be appointed if the court determines that the litigant's inability to comprehend English deprives the litigant of an understanding of the court proceedings, that a fundamental interest is at stake (such as in a civil commitment, termination of parental rights, paternity, or dependency proceeding), and that no alternative to the appointment of an interpreter exists.
(c) Witnesses. In any proceeding in which a non-English-speaking person is a witness, the appointment of an interpreter shall be governed by the applicable provisions of the Florida Evidence Code.
(d) Compliance with Title VI of the Civil Rights Act of 1964. In making determinations regarding the appointment of an interpreter, the court should ensure compliance with the requirements of Title VI of the Civil Rights Act of 1964.
(e) Qualifications of Interpreter.
(1) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Available. Whenever possible, a certified or duly qualified interpreter, as defined in the Rules for Certification and Regulation of Court Interpreters, shall be appointed.
(2) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Unavailable. If, after diligent search, a certified or duly qualified interpreter is not available, an interpreter who is neither certified nor duly qualified may be appointed if the judge or hearing officer presiding over the proceeding finds that:
(A) good cause exists for the appointment of an interpreter who is neither certified nor duly qualified, such as the prevention of burdensome delay, the request or consent of the non-English-speaking person, or other unusual circumstance; and
(B) the proposed interpreter is competent to interpret in the proceedings.
(3) On-the-Record Objections or Waivers in Criminal and Juvenile Delinquency Proceedings. In any criminal or juvenile delinquency proceeding in which the interpreter is neither certified nor duly qualified, the court shall advise the accused, on the record, that the proposed interpreter is not certified or duly qualified pursuant to the Rules for Certification and Regulation of Court Interpreters. The accused's objection to the appointment of a proposed interpreter, or the accused's waiver of the appointment of a certified or duly qualified interpreter, shall also be on the record.
(4) Additional on-the-Record Findings, Objections, and Waivers Required *1032 at Subsequent Proceedings. The appointment of an interpreter who is neither certified nor duly qualified shall be limited to a specific proceeding and shall not be extended to subsequent proceedings in a case without additional findings of good cause and qualification as required by subdivision (e)(2) of this rule, and additional compliance with the procedures for on-the-record objections or waivers provided for in subdivision (e)(3) of this rule.
(f) Privileged Communications. Whenever a person communicates through an interpreter to any person under circumstances that would render the communication privileged and such person could not be compelled to testify as to the communication, the privilege shall also apply to the interpreter.
NOTES
[1] Several editorial and stylistic changes have been made throughout the rules.
[2] The Committee advises that renumbered rules 2.265, Municipal Ordinance Violations, located in Part II, and 2.555, Initiation of Criminal Proceedings, located in Part V, might be more appropriately located in the Rules of Criminal Procedure. However, the Committee recommends that these rules remain in the Rules of Judicial Administration as reorganized until the matter can be considered by the Criminal Procedure Rules Committee. Consistent with the Committee's recommendation, we refer the issue of the proper placement of these rules to the Criminal Procedure Rules Committee.
[3] New rule 2.140(g)(1) is modeled after renumbered rule 2.140(d), Emergency Amendments by Court.
[4] The judicial branch records retention schedule for administrative records, which appears as an unofficial appendix to the Rules of Judicial Administration in Florida Bar and Thomson/West publications, is not included in the appendix.
[5] In accordance with In re Report of the Alternative Dispute Resolution Rules & Policy Committee on Senior Judges as Mediators, 915 So.2d 145, 153 (Fla.2005), the amendments to renumbered rule 2.320(b)(3), Mediation Training, made in that opinion will become effective November 3, 2007. In accordance with In re Petition to Adopt Florida Rules for Certification & Regulation of Court Interpreters & Florida Rule of Judicial Administration 2.073, 933 So.2d 504 (Fla.2006), renumbered rule 2.560(e), Qualifications of Interpreter, will become effective July 1, 2008.